# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

February 17, 2012

No. 10-11299

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff-Appellee

v.

CASEY SHAWN SELF,

Defendant-Appellant

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 4:10-CR-64-1

Before JONES, Chief Judge, and HIGGINBOTHAM and SMITH, Circuit Judges.

PER CURIAM:[*]

Casey Shawn Self appeals his sentence of 180 months for pleading guilty to possessing stolen mail and making, possessing, and uttering a counterfeit security. Self argues that the district court erred in applying two enhancements to his sentence and that the court denied him his right to allocution prior to sentencing. Finding that any sentencing error made by the district court was harmless and that no allocution error occurred, we AFFIRM.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 10-11299

## BACKGROUND

For several years Self participated in a counterfeit check scheme with four accomplices. Self's girlfriend, LaDonna Garcia, introduced him to Susana Askar Barakat in 2006 and the three started a counterfeiting scheme. Self would break into mail collection boxes and personal mailboxes, with Garcia as a lookout, and obtain personal information about his victims. Self, Garcia, and Barakat would then use that information to make counterfeit checks, obtain counterfeit identification cards, and obtain credit cards in others' names. Garcia's involvement in the scheme ceased in December 2008 when she was arrested on drug charges. After Garcia's arrest, Self became involved in a relationship with Balaina Collins, who replaced Garcia as the lookout and negotiated fraudulent checks. Barakat's boyfriend, Mark Coker, was the fifth member of the scheme and purchased stolen bank account and routing numbers from Self. Coker also obtained fraudulent memberships at Sam's Club in at least two different people's names.

After complaints from postal customers in November 2008, postal inspectors began investigating a string of thefts from postal boxes. During the investigation, inspectors identified Self, Barakat, Collins, and Garcia in surveillance videos negotiating fraudulent checks made from information stolen from postal boxes. Self was arrested while attempting to negotiate a counterfeit check in Dallas on August 9, 2009. Upon his arrest, Self used an alias, Brett Bowerman, and he was released on bond the same day based on this false identity. On August 30, 2009, authorities established surveillance on several postal boxes in an area where several thefts had occurred. As part of this operation, officers observed Self trying to gain access to a postal collection box.

No. 10-11299

Officers approached Self with weapons drawn in an attempt to apprehend him, but Self ran from the officers and jumped on his motorcycle. As he sped away, he drove right at an officer who had to dodge the motorcycle to avoid being hit. After his escape, Self continued his crime spree by stealing more mail and continuing to negotiate fraudulent checks. This spree was finally halted when Self was arrested on unrelated charges on February 20, 2010. Self again gave a false name and identification to police, but as he was in the process of establishing bond he was identified as Casey Self and held for the postal inspector.

Self and his accomplices stole $138,831.37 from identified victims and are responsible for a potential overall loss exceeding $200,000. They defrauded 71 merchants and financial institutions and 77 known individual victims. The postal inspector identified another 148 potential victims. After pleading guilty, Self was sentenced to 180 months incarceration and three years of supervised release.

## DISCUSSION

Self now appeals his sentence arguing that the district court erred by increasing his sentence for obstruction of justice and for his role in the offense. Self also claims that the judge denied him his right to allocution.

### A. Sentencing

This court reviews a district court's sentencing decision for abuse of discretion. *Gall v. United States*, 552 U.S. 38, 51 (2007); *United States v. Cisneros-Gutierrez*, 517 F.3d 751, 764 (5th Cir. 2008). The "district court's interpretation or application of the Sentencing Guidelines is reviewed de novo, and its factual findings . . . are reviewed for clear error. There is no clear error

No. 10-11299

if the district court's finding is plausible in light of the record as a whole." *Cisneros-Gutierrez*, 517 F.3d at 764 (quoting *United States v. Juarez-Duarte*, 513 F.3d 204, 208 (5th Cir. 2008)). This court will not deem factual findings clearly erroneous unless a review of the evidence leaves it "with the definite and firm conviction that a mistake has been committed." *United States v. Rose*, 449 F.3d 627, 633 (5th Cir. 2006) (quoting *United States v. Cabrera*, 288 F.3d 163, 168 (5th Cir. 2002)).

1. *Obstruction of Justice Sentence Enhancement*

Self argues that the comments to the sentencing guidelines counsel against applying the obstruction of justice sentence enhancement in this case. Under U.S.S.G. § 3C1.1 a two-level enhancement is appropriate "[i]f (1) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of <u>the instant offense of conviction</u>, and (2) the obstructive conduct related to . . . <u>the defendant's offense of conviction</u> and any relevant conduct." (emphasis added). The comments do not precisely define what conduct qualifies for the obstruction enhancement, but there is a list of types of conduct that do not warrant the enhancement. § 3C1.1 cmt. 5. One such example is "providing a false name or identification document at arrest, except where such conduct actually resulted in a significant hindrance to the investigation or prosecution of the instant offense." § 3C1.1 cmt. 5(A). Self claims that the only potentially obstructive conduct he committed falls within this comment and should thus not be used to support an obstruction of justice enhancement.

We do not resolve whether Self is correct that the court erred by adding a two-level enhancement to his sentence for obstruction of justice, because any

error is harmless. In *United States v. Delgado-Martinez*, 564 F.3d 750, 753 (5th Cir. 2009), this court recognized that an error can be harmless even if the district court did not consider the correct guidelines range in its analysis. Such an error is only harmless, however, if the court *would* have imposed the same sentence absent the error.

In the instant case, the Pre-Sentence Report ("PSR") calculated the sentencing range as 210 to 262 months. The statutory maximum, however, was 180 months and the judge imposed that sentence only after indicating that he did not think the punishment was sufficiently harsh. If the obstruction of justice enhancement had not been applied, the sentencing guideline would have been 169 to 210 months with the same 180 statutory maximum. U.S.S.G. Ch. 5, Pt. A. That the sentence imposed on Self was within the lower range is relevant, but not dispositive that no harmful error occurred. *Delgado-Martinez*, 564 F.3d at 753. The issue is whether the district court would have still sentenced Self to the statutory maximum 180 months given this lower range.

Though the burden to prove harmless error is heavy when the sentence range is miscalculated, it has been met in this case. First, the judge's reasoning would not change if there had been no obstruction of justice enhancement. The record suggests that the judge was committed to applying the statutory maximum because of the devastating effect Self's crimes had on the victims and because of Self's criminal history. The judge said the following to Self at sentencing:

> I don't think anybody on your side of this crime can understand the pain that you cause to people who have their identity stolen, their bank accounts drawn from. It's very upsetting, and not only upsetting, it's a lot of trouble to have to go to stop all that and to repair the damage that's done, sometimes never repaired. So those people who have done nothing

to you or to anyone else are suddenly in a much worse financial situation. They may be very hard-working, worked very hard all their lives to acquire a good credit rating, which in our society is very important, and because of your actions, there are many people who have had that threatened. So *it's a serious crime and one that our guidelines struggles* [sic], *without success usually, to take account of* because there is no way to quantify the damage that that crime does to a person's well being, sense of well being, their psyche, and their financial credit rating in our society. So I appreciate your expression of remorse, *but the crime demands the punishment* that I intend to impose.

There is no indication that the judge's commitment to apply the maximum sentence allowed by law would be influenced by the elimination of the obstruction of justice enhancement, especially since the sentence he imposed was within the lower range endorsed by the defense. In fact, his statement suggests that he did not think that the penalties allowed by law were severe enough.

Moreover, the court did not mention obstruction of justice in its justification for the sentence in its statement of reasons. The court highlighted that Self had committed similar crimes in the past, had been "afforded probation, terms of parole, and has served brief or intermediate sentences of incarceration." Despite these punishments, Self continued to break the law and the judge imposed the statutory maximum sentence of incarceration as a result.

In sum, any error committed by the court in applying the obstruction of justice enhancement was harmless.

2. *Role in the Offense Sentence Enhancement*

Self argues that the judge erroneously applied a three level increase for a managerial role in the offense. Under U.S.S.G. § 3B1.1(b), a three level increase in the offense level is appropriate if the defendant plays a managerial role (but is not an organizer or leader) and the criminal activity involved five or more

participants. Self's main contention is that both Garcia and Barakat played a larger role in the offense than he did. He claims that Garcia recruited him into the scheme and that he did not manage any of his accomplices.

The determination that a defendant is a manager or supervisor under § 3B1.1 is a factual finding reviewed for clear error. *Rose*, 449 F.3d at 633. "To qualify for an adjustment under this section, the defendant must have been the organizer, leader, manager, or supervisor of one or more other participants." § 3B1.1 cmt. 2. In making this determination, a sentencing court should consider: (1) the exercise of decisionmaking authority; (2) the nature of participation in the commission of the offense; (3) the recruitment of accomplices; (4) the claimed right to a larger share of the fruits of the crime; (5) the degree of participation in planning or organizing the offense; (6) the nature and scope of the illegal activity; and (7) the degree of control and authority exercised over others. § 3B1.1 cmt. 4.

Despite Self's denial that he played a large part in the scheme, several of the factors are satisfied. Self was the one who broke into the postal collection boxes and stole the information, which he and Barakat later used to make fraudulent checks and identification. Although Garcia recruited Self and taught him how to make the fraudulent checks and identification, as Postal Inspector Hernandez testified at sentencing, Self took what he learned and ran with it. Self's idea was to target postal collection boxes. Self also recruited Collins into the scheme as his lookout when he broke into the postal collection boxes. Collins took directions from Self in the criminal activity, including how to cash counterfeit checks and to use a fake driver's license as identification. Under the guidelines and Fifth Circuit case law, supervising even one other co-conspirator

is sufficient to justify the greater enchantment for a leader or organizer. *United States v. Cooper*, 274 F.3d 230, 247 (5th Cir. 2001). Thus, the district court was justified in applying the managerial role enhancement to Self's sentence.

## B. Allocution

Self asserts that the district court plainly erred by denying him an opportunity to allocute <u>before</u> imposing the sentence. Plain error review applies because Self did not object on this ground in the district court. *See United States v. Reyna*, 358 F.3d 344, 350 (5th Cir. 2004) (en banc). Thus, Self must show that the court made a clear or obvious error that affects his substantial rights. *See Puckett v. United States*, 556 U.S. 129, 135, 129 S. Ct. 1423, 1429 (2009). If Self makes such showing, the court has the discretion to correct the error but only if it seriously affects the fairness, integrity, or public reputation of judicial proceedings. *Id.*

Rule 32(i)(4)(A)(ii) of the Federal Rules of Criminal Procedure requires the district court to "address the defendant personally in order to permit the defendant to speak or present any information to mitigate the sentence" before imposing sentence. The district court must apply Rule 32 "quite literally" and "make 'a personal inquiry directed to the defendant.'" *United States v. Magwood*, 445 F.3d 826, 829 (5th Cir. 2006) (quoting *United States v. Dickson*, 712 F.2d 952, 956 (5th Cir. 1983)). The record must indicate "that the defendant knew he had a right to speak on any subject of his choosing prior to the imposition of sentence." *United States v. Echegollen-Barrueta*, 195 F.3d 786, 789 (5th Cir. 1999); *see also United States v. Hernandez*, 291 F.3d 313, 315-16 & n.1 (5th Cir. 2002) (determining that an invitation by the district court to the defendant to speak on any statement amounted to compliance with Rule 32).

No. 10-11299

After the district court ruled on Self's objections to the PSR, the court announced the applicable guidelines "range." The following exchange then occurred:

[The Court]: Mr. Curtis, I intend to sentence your client as required by the guidelines. Do you, nevertheless, wish to make any remarks on behalf of Mr. Self?

Mr. Curtis: Your, Honor, I believe I've made the remarks that I need to make at this time, but I think Mr. Self would probably like to speak.

[The Court]:Mr. Self, would you like to speak on your own behalf or present any information in mitigation of your sentence?

Self then spoke, apologizing for his actions and stating that he has never been given any kind of rehabilitation for his drug addition. The district court responded that it would recommend rehabilitation for Self and then commented on how Self's actions affected the victims. After asking if the Government had anything to say, the district court imposed a sentence of 180 months of imprisonment. The district court did not actually impose Self's 180-month sentence until after Self was given the opportunity to speak. The court considered Self's remarks as evidenced by the recommendation for rehabilitation. His right to allocution was not violated.

## CONCLUSION

For the foregoing reasons, the conviction and sentence are **AFFIRMED**.