FILED
United States Court of Appeals
Tenth Circuit

August 3, 2010

Elisabeth A. Shumaker
Clerk of Court

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

    Plaintiff–Appellee,

v.

BLAS LANDEROS-LOPEZ, a/k/a
Miguel Ayala Aguilar,

    Defendant–Appellant.

No. 09-8056

---

**Appeal from the United States District Court
for the District of Wyoming
(D.C. No. 2:08-CR-00105-ABJ-21)**

---

Edwin S. Wall, Edwin S. Wall, P.C., Salt Lake City, Utah, for Defendant–Appellant.

Stuart S. Healy, III, Assistant United States Attorney, Cheyenne, Wyoming, for Plaintiff–Appellee.

---

Before **LUCERO**, **HOLLOWAY**, and **MURPHY**, Circuit Judges.

---

**LUCERO**, Circuit Judge.

---

Blas Landeros-Lopez ("Landeros") pled guilty to one count of conspiracy to traffic in methamphetamine. On appeal, Landeros argues that the district court failed to elicit a sufficient factual basis to support his guilty plea and denied him the right to speak at sentencing. Our decision today clarifies this circuit's factual basis standard and explains the contours of the right of allocution. Exercising jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742, we affirm Landeros' conviction, but vacate his sentence and remand for resentencing.

**I**

Landeros came to the attention of authorities when Alejandro Gonzalez, a known methamphetamine dealer, entered Landeros' apartment while he was under police surveillance. Gonzalez informed law enforcement officers that he had purchased methamphetamine while inside. A subsequent search of the dwelling uncovered approximately 850 grams of methamphetamine, a loaded shotgun, and $2,800 in cash stored in a bedroom Landeros shared with his cousin, Fabian Landeros-Beltran.

Landeros was indicted on one count of conspiracy to traffic in methamphetamine in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A), and § 846, and one count of possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A). In March 2009, he agreed to plead guilty to the conspiracy charge in exchange for dismissal of the firearm charge.

At his plea hearing, Landeros was asked to submit a factual basis for his plea pursuant to Federal Rule of Criminal Procedure 11(b)(3). He denied knowing that any

methamphetamine sales had occurred in his apartment and denied benefitting from such sales. At the same time, Landeros acknowledged that Landeros-Beltran was selling methamphetamine and that he had accepted rent money from him.[1] A statement from the prosecutor establishing the amount of methamphetamine in Landeros' constructive possession was also before the district court. Finding a factual basis for each element of conspiracy, the court accepted the plea.

A Presentence Investigation Report ("PSR") was then prepared, detailing the evidence against Landeros. This evidence included a recitation of facts from the prosecutor's charging documents, as well as proffered statements from Gonzalez and another local drug dealer that implicated Landeros in drug distribution activities. Landeros did not object to these findings. The PSR calculated a sentencing range of 135 to 168 months.

At sentencing, the district court adopted this calculation but granted the government's request for a downward departure. It further opted to vary Landeros' sentence downward and imposed a term of imprisonment of 115 months. After specifying the conditions of Landeros' confinement and supervised release, the district court stated: "That is the sentence the Court intends to impose in this matter. Does the defendant have anything to say before the Court imposes this sentence?" Landeros offered a brief apology, and the court concluded the proceeding. A judgment was entered

---

[1] Landeros also conceded that he was present when Gonzalez purchased methamphetamine at the apartment.

shortly thereafter. This appeal was then commenced.

**II**

Federal Rule of Criminal Procedure 11(b)(3) provides: "Before entering judgment on a guilty plea, the court must determine that there is a factual basis for the plea." This rule is intended "to ensure the accuracy of the plea through some evidence that a defendant actually committed the offense." United States v. Keiswetter, 860 F.2d 992, 995 (10th Cir. 1988); see also United States v. Thomas, 367 F.3d 194, 197 (4th Cir. 2004) ("[Rule 11(b)(3)] ensures that the court make clear exactly what a defendant admits to, and whether those admissions are factually sufficient to constitute the alleged crime." (quotations omitted)). When a defendant fails to object on Rule 11 grounds at sentencing, we review a district court's acceptance of his plea for plain error. United States v. Edgar, 348 F.3d 867, 871 (10th Cir. 2003). "Plain error occurs when there is (1) error, (2) that is plain, which (3) affects the defendant's substantial rights, and which (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings." United States v. Taylor, 514 F.3d 1092, 1100 (10th Cir. 2008).

Landeros argues that the district court's acceptance of his plea constituted plain error because there was an insufficient factual basis to support his conviction. He specifically contends that his "tortured colloquy" with the judge during his plea hearing failed to demonstrate the four elements of conspiracy: "(1) that two or more persons agreed to violate the law, (2) that the defendant knew at least the essential objectives of the conspiracy, (3) that the defendant knowingly and voluntarily became a part of it, and

-4-

(4) that the alleged coconspirators were interdependent." United States v. Sells, 477 F.3d 1226, 1235 (10th Cir. 2007) (quotations and alteration omitted).

Yet, nothing in Rule 11(b)(3) restricts a district court's consideration of a factual basis to its plea colloquy with the defendant alone. United States v. Moran, 452 F.3d 1167, 1171 (10th Cir. 2006). We agree with the government that, when read in combination with the prosecutor's statements and the plea colloquy, the PSR provides a sufficient factual basis for the court to accept Landeros' plea. At the beginning of the hearing, the prosecutor established that the amount of methamphetamine in Landeros' constructive possession totaled over 1.5 kilograms. Landeros admitted that Landeros-Beltran was selling drugs, that he was present when Gonzalez purchased methamphetamine, and that he accepted drug proceeds from Landeros-Beltran to pay his rent. The PSR provided greater detail regarding Landeros' conduct, including statements made by Gonzalez and another local drug dealer connecting Landeros and Landeros-Beltran to drug-dealing operations. According to Gonzalez, the two cousins transported methamphetamine between Arizona and Colorado every two to three months.[2]

We disagree, however, that this evidence proves that a Rule 11 violation did not occur. "Rule 11 . . . contemplates the existence of the factual basis for the plea both when the court accepts the plea, and when it enters judgment on it." Id. (emphasis added). A district court may look to evidence submitted after a guilty plea has been

---

[2] Gonzalez also stated that Landeros planned and oversaw these trips.

accepted to determine whether a factual basis for the plea continues to exist; if later evidence destroys the court's initial factual-basis determination, it may withdraw its acceptance of a guilty plea. Id. But a judge's initial determination must be based on information in the record at the time the plea is made. See Keiswetter, 860 F.2d at 996 ("Rule 11[(b)(3)] [is based on] a subjective, rather than objective standard." (referring to the substantive predecessor of Rule 11(b)(3))).

Because the PSR was not prepared until after Landeros' guilty plea was accepted, we cannot look to it in considering whether the district court correctly determined there was a factual basis for accepting the plea. We can, however, look to the PSR in evaluating whether any error affected Landeros' substantial rights. See United States v. Vonn, 535 U.S. 55, 59 (2002) ("[A] reviewing court may consult the whole record when considering the effect of any error on substantial rights."); see also United States v. Garcia, 587 F.3d 509, 520 (2d Cir. 2009) ("While the existence of a factual basis for the plea is determined on the basis of the record as of the plea proceeding, in assessing whether the error affects substantial rights, the record as a whole becomes relevant." (citations omitted)). When the record as a whole demonstrates a sufficient factual basis for a plea, any Rule 11(b)(3) error committed by the district court is harmless. See United States v. Adams, 961 F.2d 505, 511-13 (5th Cir. 1992).[3]

---

[3] In United States v. Dominguez Benitez, the Supreme Court held that "a defendant who seeks reversal of his conviction after a guilty plea, on the ground that the district court committed plain error under Rule 11, must show a reasonable probability

Continued . . .

As noted supra, the full record provides a sufficient factual basis to support

Landeros' guilty plea.  Thus, any Rule 11(b)(3) error committed by the district court did

not affect his substantial rights and does not warrant reversal of the conviction.

**III**

Landeros also contends he was denied the right of allocution.  Federal Rule of

Criminal Procedure 32(i)(4)(A)(ii) requires a district court to "address the defendant

personally in order to permit the defendant to speak or present any information" before

imposing a sentence.  Because allocution is vital to the sentencing process, denial of this

right requires reversal of the sentence imposed.  Green v. United States, 365 U.S. 301,

304 (1961) (plurality opinion) ("As early as 1689, it was recognized that the court's

failure to ask the defendant if he had anything to say before sentence was imposed

required reversal."); United States v. Jarvi, 537 F.3d 1256, 1262 (10th Cir. 2008); ("[A]

denial of allocution is per se prejudicial and requires a remand without an investigation of

---

that, but for the error, he would not have entered the plea."  542 U.S. 74, 83 (2004).
However, the Dominguez Benitez rule is limited to evaluating "the effect of [an] omitted
warning on a defendant's decision" to enter a guilty plea—that is, an error affecting the
knowing and voluntary nature of a defendant's plea.  Id. at 84.

Rule 11(b)(3) errors are distinct from the type of error addressed in Dominguez
Benitez:  A district court must reject a defendant's plea if it lacks a factual basis, even if
the plea is knowingly and voluntarily made.  See Libretti v. United States, 516 U.S. 29,
42 (1995) (whether there is a factual basis for a plea "is a distinct inquiry" from whether
a plea was knowingly and voluntarily made).  Thus, whether Landeros would have plead
guilty in spite of any Rule 11(b)(3) error is irrelevant; the issue is whether the district
court's alleged error in accepting the plea had a substantial effect on his rights.
Accordingly, the Dominguez Benitez rule does not apply.

prejudice."); <u>United States v. Muniz</u>, 1 F.3d 1018, 1025 (10th Cir. 1993) ("The right to

allocution is an integral part of the sentencing process which if not fully afforded to the

defendant requires a reversal of the sentence imposed."), <u>cert. denied</u>, 510 U.S. 1002

(1993).[4]

---

[4] Despite our repeated pronouncements that allocution denials are per se prejudicial, this circuit has yet to formally adopt a standard of review for alleged violations of Rule 32's right of allocution. In an unpublished decision, a panel of this court recently held that "we review de novo whether a district court denied a defendant his right to speak at sentencing," notwithstanding the lack of an objection below. <u>United States v. Beltran-Garcia</u>, 338 F. App'x 765, 770, 774 (10th Cir. 2009) (unpublished). Likewise, our previous opinions concerning defendant allocution implicitly applied de novo review. <u>See</u> <u>Jarvi</u>, 537 F.3d at 1261-62; <u>United States v. Archer</u>, 70 F.3d 1149, 1151-52 (10th Cir. 1995); <u>Muniz</u>, 1 F.3d at 1025.

The Supreme Court has not expressly adopted a standard of review for allocution errors. <u>See</u> <u>Green</u>, 365 U.S. at 304-05. Although Fed. R. Crim. P. 52(b) requires that most errors raised for the first time on direct appeal are subject to plain-error review, the Court has left open the possibility that Rule 52(b) might not apply in a limited class of cases. <u>See</u> <u>Puckett v. United States</u>, 129 S. Ct. 1423, 1429 (2009); <u>United States v. Olano</u>, 507 U.S. 725, 732 (1993).

Our sibling circuits have reached conflicting conclusions regarding whether Rule 52(b) applies in the allocution context. Both the Sixth and the Eleventh Circuits review unpreserved allocution errors de novo, reasoning that these errors affect the legality of the sentencing process. <u>United States v. Wolfe</u>, 71 F.3d 611, 614 (6th Cir. 1995) ("[B]ecause the right of the defendant and his counsel to allocute at sentencing is given in Fed. R. Crim. P. 32, when the defendant alleges he was denied this right he will usually be arguing that his sentencing procedures were <u>deficient as a matter of law</u>." (emphasis added)); <u>United States v. Taylor</u>, 11 F.3d 149, 151 (11th Cir. 1994) ("We review questions involving the legality of a criminal sentence de novo."). Other circuits review allocution claims for plain error, but presume prejudice if there is any possibility a defendant could have received a lesser sentence if properly provided the opportunity to allocute. <u>See</u> <u>United States v. Luepke</u>, 495 F.3d 443, 451 (7th Cir. 2007); <u>United States v. Reyna</u>, 358 F.3d 344, 351-52 (5th Cir. 2004); <u>United States v. Adams</u>, 252 F.3d 276, 287 (3d Cir. 2001). Still others review for plain error without presuming prejudice, or for

Continued . . .

-8-

At the sentencing hearing, Landeros was afforded an opportunity to speak only after the district court conducted a lengthy recitation of his sentence. Toward the end of the hearing, the court announced:

> Pursuant to the Sentencing Reform Act of 1984 and those factors set forth in Title 18 United States Code Section 3553(a), it is and will be the judgment of this Court that the defendant, Blas Landeros, is hereby committed to the custody of the Bureau of Prisons to be imprisoned for a term of 115 months.
>
> Upon release from imprisonment this defendant shall be placed on supervised release for a term of five years . . . .

(emphasis added). Having made these seemingly conclusive pronouncements, the court then described the conditions of confinement and supervised release, informed Landeros of his right to appeal, and stated: "That is the sentence the Court intends to impose in this matter. Does the defendant have anything to say before the Court imposes this sentence?" Landeros responded briefly: "Yes. I wish to apologize to those present. . . .

---

harmless error. See United States v. Cole, 27 F.3d 996, 998 (4th Cir. 1994) (reviewing for plain error); United States v. Carper, 24 F.3d 1157, 1162 (9th Cir. 1994) (reviewing for harmless error).

The parties do not substantively analyze the applicability of Rule 52(b), and we decline to decide this issue when it can be avoided on the record before us. Assuming arguendo plain error applies, that standard is met here. As noted, our prior precedent does make clear that allocution errors are per se prejudicial. Jarvi, 537 F.3d at 1261. Consequently, to the extent Rule 52(b) applies, we will examine only whether "there is (1) error, (2) that is plain, which . . . [(3)] seriously affects the fairness, integrity, or public reputation of judicial proceedings." Taylor, 514 F.3d at 1100. As our discussion infra demonstrates, the district court's legal error in adjudging Landeros' sentence before providing him with the opportunity to allocute was plain and seriously affected the fairness of his judicial proceedings.

I didn't make those round trips that have been mentioned. And it was my cousin that brought me [to Wyoming]. That's all." Without formally imposing a sentence, the court concluded the proceeding. A judgment imposing a sentence of 115 months' imprisonment was filed six days later.

An almost identical factual situation came before the Seventh Circuit in United States v. Luepke. At Luepke's sentencing hearing, the district court had discussed its rationale for fixing a sentence in the middle of the applicable guidelines range and stated, "[A]ccordingly . . . the defendant is committed to the custody of the Bureau of Prisons for imprisonment for a term of 240 months." Luepke, 495 F.3d at 445 (quotation omitted). After detailing Luepke's conditions of confinement and supervised release, the court continued, "[B]efore imposing any sentence in this matter I will call upon the defendant for those matters which he would like to bring to the Court's attention." Id. (quotation and emphasis omitted). Luepke gave a brief apology, and then the court asked whether, "before . . . imposing the sentence as previously announced," defense counsel had any remaining issues to discuss. Id. (quotation and emphasis omitted). Defense counsel made a few comments, after which the court reminded him: "[W]e're not through yet. I haven't imposed the sentence." Id. (quotation and emphasis omitted). Concluding the proceeding, the court stated, "[A]ll right . . . the Court does impose that sentence as previously announced." Id. (quotation omitted, second alteration in original).

Based on this sequence of events—and, in particular, the highly conclusive language used by the district court—the Seventh Circuit held that Luepke was denied a

meaningful allocution.  It reasoned that the purposes of allocution are not served simply because "at some point before the close of a sentencing proceeding, a defendant is invited to speak."  Id. at 450.  Instead, a district court "actually must take steps to communicate effectively to the defendant that, through his statement, he has a meaningful opportunity to influence the sentence."  Id.  (emphasis omitted).  Belatedly inviting the defendant to speak after announcing his sentence does not satisfy this standard, even if the sentence has yet to be formally imposed.  The Luepke court reasoned that, when a defendant is invited to speak after a sentence has been adjudged, the defendant has "little incentive to share his thoughts on the matter of a sentence that he ha[s] every reason to believe ha[s] already been decided."  Id.  In fact, "it would be quite reasonable for a defendant in such a situation to conclude that a manifestation of any disagreement with the court at that juncture would be interpreted as disrespectful and warranting additional sanctions."  Id.  Accordingly, if a district court adjudges a sentence before the defendant has an opportunity to speak, the right of allocution is fulfilled only if the court communicates that it will "genuinely reconsider the sentence in light of the elicited statement."  Id. at 448 (quotation omitted).

This reasoning is grounded in longstanding Supreme Court precedent.  In Green, a plurality of the Court affirmed that Rule 32 provides a defendant with a personal right to allocute.  Recognizing that "[t]he most persuasive counsel may not be able to speak for a defendant as the defendant might, with halting eloquence, speak for himself," Green held

that merely permitting defense counsel to speak falls short of Rule 32's dictate.[5] 365 U.S. at 304. Instead, "trial judges should leave no room for doubt that the defendant has been issued a personal invitation to speak prior to sentencing." Id. at 305 (emphasis added).

A majority of the Court reiterated this requirement the following year. In Hill v. United States, it explained: "[In Green,] eight members of the Court concurred in the view that Rule 32[] requires a district judge before imposing [a] sentence to afford every convicted defendant an opportunity personally to speak in his own behalf." 368 U.S. 424, 426 (1962). Although the majority concluded that allocution errors generally do not constitute grounds for habeas relief under 28 U.S.C. § 2255, it reaffirmed Green's rule in no uncertain terms: "There thus remains no doubt as to what . . . Rule [32] commands" with respect to allocution.[6] Hill, 368 U.S. at 426. Hill also reaffirmed the rule adopted in Van Hook v. United States, 365 U.S. 609 (1961) (per curiam)—a two-sentence opinion issued one month after Green—that the proper remedy for an allocution error raised on

---

[5] Green dealt with an earlier version of Rule 32. In enacting the current rule, Congress sought to solidify the conclusions reached in that case. See Luepke, 495 F.3d at 449 & n.5. Rule 32 now separates the right of a defendant to speak on his own behalf from the right of a defendant to have counsel speak on his behalf. Compare Fed. R. Crim. P. 32(i)(4)(A)(i), with Fed. R. Crim. P. 32(i)(4)(A)(ii).

[6] The dissent further remarked: "[D]ue observance of the requirements of Rule 32[], resting as they do upon the anciently recognized right of a defendant to speak to the court before sentence is imposed, is important to the proper administration of justice in the federal courts." Id. at 474-75 (Black, J., dissenting).

direct appeal is to remand for resentencing.  Hill, 368 U.S. at 429 n.6.

Our most recent pronouncement on the issue of allocution came in the 2008 case of United States v. Jarvi.  We held there that a defendant "has a broad right to present any information to mitigate [his] sentence."  Jarvi, 537 F.3d at 1262 (quotations omitted).  A court therefore commits reversible error when it prevents a defendant from making his "best case" for a lenient sentence.  Id.  Although allocution does not encompass a right to re-argue the merits of a case, Muniz, 1 F.3d at 1025, a defendant "is entitled to have considered—at least once—his arguments for mitigation of sentence," Jarvi, 537 F.3d at 1262.

Jarvi relied largely on the premise that trial courts must comply with the substance of Rule 32, rather than the mere form of the rule.  See 537 F.3d at 1261-62.  As the Seventh Circuit noted in Luepke, "[A]side from its practical role in sentencing, the right [of allocution] has value in terms of maximizing the perceived equity of the [sentencing] process."  495 F.3d at 451 (quotation and emphasis omitted).  Providing a defendant with a meaningful opportunity to speak on his own behalf advances the public perception of fairness.[7]  Consequently, a sentencing court undermines its own legitimacy when it invites a defendant to speak only after making clear that his sentence is a foregone

---

[7] We note that there are additional benefits to defendant allocution.  It gives the defendant an opportunity to apologize and express remorse, supplies a forum in which defendants may challenge societal injustice, and may provide answers to victims' questions regarding the crime.  See Mary Margaret Giannini, Equal Rights for Equal Rites?: Victim Allocution, Defendant Allocution, and the Crime Victims' Rights Act, 26 Yale L. & Pol'y Rev. 431, 478-81 (2008).

-13-

conclusion.  See Adams, 252 F.3d at 288 (concluding that denial of the right to allocute is the kind of error that "impact[s] the fairness, integrity or public reputation of judicial proceedings" (quotations omitted)).  Although courts need not follow a prewritten script, they must "leave no room for doubt that the defendant has been issued a personal invitation to speak prior to sentencing."  Green, 365 U.S. at 305.[8]  When a sentencing court adjudges a sentence prior to allocution, Green's mandate is unsatisfied.

By definitively announcing Landeros' sentence before providing him with an opportunity to speak on his own behalf, the district court prematurely adjudged his sentence.  The court's conclusive statements effectively communicated to Landeros that his sentence had already been determined, and that he would not have a meaningful opportunity to influence that sentence through his statements to the court.

Similarly, the court's later remark that it merely "intended" to impose this sentence did not cure its initial error.  This back-pedaling failed to indicate that the court would genuinely reconsider the adjudged sentence in light of any remarks made by the defendant.  We ultimately conclude that Landeros' right of allocution was violated, and that we must vacate his sentence.  In doing so, we echo the sentiments of our sibling circuit:  "Because the sentencing decision is a weighty responsibility, the defendant's

---

[8] "It will normally be preferable for a district court to allow the defendant and his counsel to speak before ruling on the objections and passing sentence . . . because such a sequence enhances the perception that the judge is being impartial."  Luepke, 495 F.3d at 615.  Nonetheless, providing defendants with the opportunity to speak only after ruling on their objections to sentencing matters does not—in and of itself—violate a defendant's allocution rights.  See Wolfe, 71 F.3d at 614-15.

right to be heard must never be reduced to a [mere] formality . . . . [C]ourts must continue to be cautious to avoid the appearance of dispensing assembly-line justice." United States v. Barnes, 948 F.2d 325, 331 (7th Cir. 1991).

## IV

For the foregoing reasons, we **AFFIRM** Landeros' conviction, but **VACATE** his sentence and **REMAND** to the district court for resentencing consistent with this opinion.