**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**July 3, 2017**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.                                                          No. 15-3275

JESUS OCTAVIO VALDEZ-
AGUIRRE,

Defendant-Appellant.

_____

**Appeal from the United States District Court**
**for the District of Kansas**
**(D.C. No. 2:14-CR-20071-JAR-1)**
_____

Submitted on the briefs:[*]

Virginia L. Grady, Federal Public Defender, and John T. Carlson, Assistant
Federal Public Defender, Denver, Colorado, for Defendant-Appellant Jesus
Octavio Valdez-Aguirre.

Thomas E. Beall, United States Attorney, and Carrie N. Capwell, Assistant
United States Attorney, Kansas City, Kansas, for Plaintiff-Appellee United
States of America.

_____

[*]     We conclude that oral argument would not materially help us to
decide this appeal. _See_ Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).
Thus, we are deciding the appeal based on the briefs.

Before **LUCERO**, **MATHESON**, and **BACHARACH**, Circuit Judges.

_____

**BACHARACH**, Circuit Judge.

_____

This appeal involves allocution. When a convicted defendant allocutes, he or she makes a statement in mitigation of the sentence to be imposed. Allocution, *Black's Law Dict.* 91 (Bryan A. Garner ed., 10th ed. 2014) (second definition).[1] The right to make such a statement is guaranteed under the federal rules. Fed. R. Crim. P. 32(i)(4)(A)(ii). By definition, allocution is to take place before the sentence is imposed. Otherwise, the defendant would have little to gain from making a statement.

But federal trial courts frequently approach sentencing with at least some idea of what they intend to impose. *See* Marvin E. Frankel & Leonard Orland, *Sentencing Commissions and Guidelines*, 73 Geo. L.J. 225, 232 (1984) (stating that "most judges, most of the time, sentence the defendant according to the number of years they wrote down after reading the

---

[1]   "Allocution" can also refer to a district court's address to convicted defendants, stating that they can make statements in mitigation of the sentences to be imposed. Allocution, *Black's Law Dict.* 91 (Bryan A. Garner ed., 10th ed. 2014) (first definition). But in this opinion, "allocution" refers only to the defendant's statement, not the trial court's address.

probation materials"); Mark W. Bennett, *Confronting Cognitive "Anchoring Effect" and "Blind Spot" Biases in Federal Sentencing: A Modest Solution for Reforming a Fundamental Flaw*, 104 J. Crim. L. & Criminology 489, 531 (2014) ("I am confident most judges already formulate a tentative sentence after reading and pondering the [presentence report], but prior to the sentencing hearing.").[2] Thus, federal trial courts sometimes announce a sentence before giving the defendant an opportunity to allocute. With these announcements, problems sometimes arise in two forms.

One form involves a trial court's announcement of a definitive sentence before giving the defendant an opportunity to allocute. This sequence creates a violation unless the court communicates its willingness to reconsider the sentence in light of what the defendant says. *See United States v. Landeros-Lopez*, 615 F.3d 1260, 1266-68 (10th Cir. 2010).

In the second form, the trial court announces a purportedly tentative sentence, but makes further statements suggesting that the court might have already made a decision. This is what took place here when Mr. Jesus

---

[2]    The drafters of the federal rules apparently contemplated this reality by requiring trial courts to announce prior to the sentencing when they are considering departures on grounds not identified in the presentence report or a party's prehearing submissions. Fed. R. Crim. P. 32(h).

Octavio Valdez-Aguirre was to be sentenced for drug conspiracy. *See* 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(viii), 846; 18 U.S.C. § 2.

Because the defendant did not object in district court, we review the sentence under the plain-error standard. *See United States v. Bustamante-Conchas*, 850 F.3d 1130, 1137 (10th Cir. 2017) (en banc). Under this standard, we can reverse only if an error took place that was "clear or obvious under current law." *United States v. Pablo*, 696 F.3d 1280, 1287, 1290 (10th Cir. 2012). An error is ordinarily clear or obvious only when a precedent is "directly in point" or a consensus exists in other circuits. *United States v. Smith*, 815 F.3d 671, 675 (10th Cir. 2016). But even when precedent is lacking, an error may be plain if the district court engaged in a clearly erroneous application of statutory law. *United States v. Story*, 635 F.3d 1241, 1248 (10th Cir. 2011).

We lack a Tenth Circuit precedent directly in point, and Mr. Valdez-Aguirre does not rely on a Supreme Court precedent,[3] a consensus of other

---

[3] In his reply brief, Mr. Valdez-Aguirre shifted his argument, relying on one passage in the Supreme Court's opinion in *Green v. United States*: "As early as 1689, it was recognized that [a] court's failure to ask the defendant if he had anything to say before sentence was imposed required reversal." 365 U.S. 301, 304 (1961).

For two reasons, Mr. Valdez-Aguirre's argument is waived. First, it was omitted in his opening brief. *United States v. Benoit*, 713 F.3d 1, 12 n.2 (10th Cir. 2013) (deeming an argument waived because the defendant had failed to raise it in his opening brief). Second, the perfunctory

circuits, or a clearly erroneous application of statutory law. As a result, we do not regard the alleged error as clear or obvious.

## I.    The Trial Court's Conflicting Statements

The trial court began by stating that it would announce a tentative sentence. *See* R. vol. 4, at 6 ("I'll start by announcing the following proposed findings of fact and tentative sentence."). After this statement, the trial court heard arguments by counsel concerning a downward variance, then characterized the announcement two times as a tentative sentence:

1.    "So based on all of this, all [sic] announce the following proposed findings of fact and tentative sentence."

2.    "The Court's tentative sentence is 360 months, followed by five years of supervised release . . . ."

*Id.* at 32. Mr. Valdez-Aguirre does not suggest that the trial court plainly erred by announcing this "tentative" sentence before allowing allocution.[4]

---

reference to *Green* does not develop a distinct argument regarding what the sentencing court said. *See United States v. Hardman*, 297 F.3d 1116, 1131 (10th Cir. 2002) ("Arguments raised in a perfunctory manner . . . are waived.").

[4]    Three other circuits have upheld the procedure of announcing a tentative sentence prior to allocution. *United States v. Burgos-Andújar*, 275 F.3d 23, 28-31 (1st Cir. 2001); *United States v. Laverne*, 963 F.2d 235, 236-38 (9th Cir. 1992); *United States v. Boose*, 403 F.3d 1016, 1017 (8th Cir. 2005) (per curiam); *see also United States v. Self*, 461 F. App'x 375, 380 (5th Cir. 2012) (holding that the defendant's right to allocution was not violated when, before inviting the defendant to speak, the district court

The court then made two statements describing what it intended to do:

1. "The Court does not intend to impose a fine."

2. "The Court does not intend to impose a denial of federal benefits . . . ."

*Id.* These statements suggested that the sentence being announced was merely tentative. *See United States v. Mendoza-Lopez*, 669 F.3d 1148, 1152 (10th Cir. 2012) (discussing language regarding "intent" as non-definitive), *overruled in part on other grounds by United States v. Bustamante-Conchas*, 850 F.3d 1130, 1143-44 (10th Cir. 2017) (en banc).

The potential problem exists in what the trial court said next, interspersing some comments suggesting that the announced sentence was tentative with other comments suggesting finality. Some of the language suggested that the court had already made up its mind on the sentence:

had announced an intent to sentence the defendant "as required by the guidelines").

The Fourth Circuit Court of Appeals has also suggested approval of this procedure. In a case involving plain-error review, the Fourth Circuit asserted that "there is simply nothing improper about the fact that the district court . . . stated that 480 months seemed to be an appropriate sentence before [the defendant's] allocution." *United States v. Engle*, 676 F.3d 405, 425 (4th Cir. 2012). The court added that "'[w]hen a judge announces a sentence before hearing an allocution, it is fair to assume that such a sentence is tentative and that the judge will consider the defendant's statements before imposing a final sentence.'" *Id.* (alteration in original) (quoting *United States v. Burgos-Andújar*, 275 F.3d 23, 30 (1st Cir. 2001)).

> After considering all of these factors and the advisory sentencing guidelines, the nature and circumstances of the offense, and Mr. Valdez' history and characteristics, the Court has decided to sentence him to a term of 360 months imprisonment, followed by five years of supervised release.

R. vol. 4, at 33-34. Similarly, the district court stated that "Mr. Valdez is ordered to pay a special assessment of $100 to the Crime Victims Fund." *Id.* at 34. And the court said that "imposition of a fine is waived," rather than merely something that was being considered. *Id.* These references suggested that the announced sentence was final. *See United States v. Landeros-Lopez*, 615 F.3d 1260, 1265, 1268 (10th Cir. 2010) (stating that finality of the sentence is suggested by similar language, such as "it is and will be the judgment of this Court" and "this defendant shall be placed on supervised release for a term of five years").[5]

---

[5] In his opening brief, Mr. Valdez-Aguirre argues that the district court made another statement suggesting that the announced sentence was final: "The Court believes that this sentence is sufficient, but not greater than necessary, to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence and protect the public from further crimes." R. vol. 4, at 34. But this statement does not indicate that the announced sentence was final rather than tentative.

In addition, in his supplemental opening brief, Mr. Valdez-Aguirre appears to argue that other statements made by the court indicated that the sentence being announced was final. But we do not consider this argument, for it went beyond the scope of the order for supplemental briefing. That order authorized supplemental briefs only to address the potential effect of *United States v. Bustamante-Conchas*, 850 F.3d 1130 (10th Cir. 2017) (en banc).

But the trial court intermittently used other language suggesting that the announced sentence was tentative. For example, the trial court twice referred to what it intended to do, stating that it

- "does not intend to impose a denial of federal benefits, finding that it is not a necessary punitive sanction in light of the significant imprisonment sentence the Court intends to impose" and

- "intends to impose the mandatory and special conditions of supervision set forth in . . . the presentence report."

R. vol. 4, at 34-35. These statements suggested that the announced sentence was tentative. *See* p. 6, above.

After announcing the sentence, the court asked the parties if they had any further objections.[6] The court then invited Mr. Valdez-Aguirre to allocute: "[B]efore I impose final sentence, would you like to address me directly in your behalf?"[7] R. vol. 4, at 36. When he declined to do so, the

---

[6] In the government's view, this statement suggested that the sentence announced was merely tentative. The government takes the same position regarding another statement by the court: "In determining the particular sentence *to be imposed*, the Court has considered . . . ." R. vol. 4, at 33 (emphasis added). For the sake of argument, we may assume that these statements did not indicate that the announced sentence was tentative.

[7] The government contends that "[t]he manner in which the district court phrased this question communicated to the defendant that the sentence it had just discussed was not the final sentence, but rather its proposed sentence and was still subject to modification." Appellee's Resp. Br. at 11. Mr. Valdez-Aguirre appears to misunderstand the government's contention. According to Mr. Valdez-Aguirre, the government is

court imposed a final sentence, which was identical to the sentence earlier described as tentative.

## II.    Two Plausible Inferences

What was the defendant to make of this combination of statements? Some statements suggested that the trial court had already made up its mind, and other statements suggested that the court hadn't. Two plausible inferences exist.

One, embraced by the government, is that the trial court framed the entire discussion from the outset as its description of a "tentative" sentence. Under this vantage point, the trial court's more definitive remarks are immaterial because the entire discussion had already been identified as tentative rather than final. This view is supported by various statements that the trial court made throughout the hearing, such as the statement to the defendant that he could address the court before imposition of the "final sentence." *Id.* at 36.

But another inference is also plausible: that the trial court revealed its actual intention by announcing the decision before allowing the defendant to allocute. *Id.* at 34. The defendant did not speak English and

contending that he should have "infer[red] from [the district court's] 'manner' something" that had not been said. Appellant's Reply Br. at 2. The government did not make this contention.

dropped out of school in eighth grade.[8] Before being allowed to allocute, he had heard his attorney present three grounds for a downward variance and heard the trial court reject each of them. Against this backdrop, Mr. Valdez-Aguirre could easily have viewed allocution as futile or even disrespectful. *See United States v. Landeros-Lopez*, 615 F.3d 1260, 1266 (10th Cir. 2010) (indicating that when the defendant is invited to speak after announcement of the final sentence, the defendant could reasonably think that expression of disagreement with the trial court could be viewed as disrespectful and lead to harsher punishment).

If the defendant had objected in district court, reversal might arguably have been appropriate. But under plain-error review, we can reverse only if the alleged error had been clear or obvious.

The alleged error here is not clear or obvious under our prior opinions. In drawing this conclusion, we consider (1) *United States v. Theis*, 853 F.3d 1178 (10th Cir. 2017) and (2) *United States v. Beadles*, 508 F. App'x 807 (10th Cir. 2013).

In *Theis*, we addressed a similar fact-pattern under plain-error review. 853 F.3d at 1183. We concluded that the defendant had failed to

---

[8]    Mr. Valdez-Aguirre apparently assumes that we should consider his particular circumstances, such as his inability to understand English. For this assumption, Mr. Valdez-Aguirre does not provide any authority. For the sake of argument, however, we can assume that Mr. Valdez-Aguirre is correct.

show that a similar alleged error seriously affected the fairness, integrity, or public reputation of the judicial proceeding. *Id.* Though the issue differed, our analysis sheds light on whether the alleged error here would have been clear or obvious.

At the sentencing hearing in *Theis*, the district court initially heard argument from the defendant's attorney. Following the argument, the court said that it would allow "further allocution, as well as any statement Mr. Theis would like to make to the [c]ourt" after the court "announced proposed findings of fact and [a] tentative sentence." *Id.* at 1182 (alterations in original). The court then heard argument from the government and announced the "proposed findings of fact and . . . tentative sentence." *Id.* (ellipsis in original). In the course of this announcement, the court expressed its intent to impose certain "terms of imprisonment." *Id.* At one point, the court stated that it "ha[d] decided" on a particular term of imprisonment and supervised release. *Id.* (alteration in original).

But the court later

- asked whether the defendant or the government had objections "to the sentence as tentatively announced" and

- invited the defendant "to address the [c]ourt directly [on his] own behalf" before imposition of the "final sentence."

-11-

*Id.* at 1182-83 (alterations in original). The defendant accepted that invitation, reading a lengthy letter in which he apologized and encouraged the court to impose a more lenient sentence. The court thanked the defendant and responded to some of his comments. Finally, the court imposed the sentence previously described. *Id.* at 1183.

We affirmed on appeal, reasoning that the defendant had enjoyed a meaningful opportunity to address the trial court and present mitigating circumstances. *Id.* We based this reasoning on three observations. First, "the district court [had] not definitively announce[d] Theis' sentence before giving him an opportunity to speak." *Id.* Second, there was no indication that the defendant had believed that the sentence was final, for he had made a lengthy argument for a more lenient sentence. *Id.* Third, the court's response to the defendant's statement showed consideration of the defendant's statement. *Id.*

We also addressed similar circumstances in an unpublished opinion: *United States v. Beadles*, 508 F. App'x 807 (10th Cir. 2013). At the sentencing hearing in *Beadles*, the district court said twice that it would announce a tentative sentence. 508 F. App'x at 809. The court also stated that it would hear allocution from the defendant. *Id.* But in making the announcement prior to allocution, the court interspersed language

suggesting both finality and tentativeness. For example, the court said that "[t]here will be no fine," "[t]here will be restitution" for a particular amount, and the sentence will include a special assessment of $100. *Id.* But the court interspersed these comments with tentative language, such as an intent to impose particular conditions of supervision. *Id.*

After announcing the sentence, the court heard from the government, a victim of the defendant's crime, and the defendant's attorney. The court then invited Mr. Beadles to make a statement if he wished. Mr. Beadles made a statement and the court imposed the final sentence, which was identical to the sentence earlier described as tentative. *Id.* at 809-10. On appeal, Mr. Beadles contended that he had been denied a meaningful right of allocution. *Id.* at 808. We disagreed, holding that the district court had not erred. *Id.* at 812-13.

*Theis* and *Beadles* are not binding, for the panel in *Theis* did not squarely decide whether an error had taken place and *Beadles* is an unpublished opinion. In addition, in both *Theis* and *Beadles,* the defendants allocuted, and Mr. Valdez-Aguirre did not.

Nevertheless, in *Theis*, when faced with a combination of pre-allocution statements similar to the one at issue here, we expressly concluded that the district court had not definitively announced the

-13-

defendant's sentence before giving him an opportunity to speak. 853 F.3d at 1183. And though *Beadles* was nonprecedential, the panel's holding under similar facts suggests that any potential error here would not have been clear or obvious.

Under *Theis* and *Beadles*, the trial court did not make a clear or obvious error. The trial court framed the entire discussion with three initial characterizations of its announcement as a tentative sentence. With that framing, one can plausibly infer that everything else was merely a detailed explanation for the tentative sentence.

This viewpoint is subject to another competing, more problematic inference, for the trial court said that it had "decided" on the sentence, "ordered" Mr. Valdez-Aguirre to pay a special assessment, and "waived" a fine. R. vol. 4, at 33-34. These comments suggested that the court might have already made up its mind.

But the trial court interspersed these comments with statements suggesting tentativeness, such as statements of its intent. And, the court ultimately offered the defendant a chance to allocute before the announcement of a "final sentence." *Id.* at 36. Guided by *Theis* and *Beadles*, we do not view the trial court's alleged error as clear or obvious.

As a result, we affirm under the plain-error standard.[9]

_____

[9]    Mr. Valdez-Aguirre also contends that the law of allocution would benefit from this bright-line rule:

> If a district court makes *any* pre-allocution statement anticipating the sentence—whether couched in terms of an "intent" or a "proposal" or a "tentative sentence," the right of allocution is fulfilled only if the court subsequently communicates that it will reconsider the sentence in light of any statement made by the defendant.

Appellant's Opening Br. at 12 (emphasis in original). In addition, Mr. Valdez-Aguirre argues that a reversal would deter the sentencing court from violating the right to allocution in other cases. But we are not reviewing these issues on a clean slate, for Mr. Valdez-Aguirre's failure to object in district court triggers the plain-error standard. *See* p. 4, above. In light of his failure to satisfy this standard, we would not reverse even if the bright-line rule were beneficial and a reversal would provide an effective deterrent.

-15-