FILED
**United States Court of Appeals
Tenth Circuit**

<u>**PUBLISH**</u>

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

**March 14, 2023**

**Christopher M. Wolpert
Clerk of Court**

_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

JOSHUA DAVID SLINKARD,

    Defendant - Appellant.

No. 22-5018

_____

**Appeal from the United States District Court
for the Northern District of Oklahoma
(D.C. No. 4:21-CR-00266-JFH-1)**

_____

Kathleen Shen, Assistant Federal Public Defender (Virginia L. Grady, Federal Public Defender, with her on the briefs), Office of the Federal Public Defender, Denver, Colorado, for Defendant-Appellant.

Thomas Duncombe, Assistant United States Attorney (Amy E. Potter, Assistant United States Attorney, and Clinton J. Johnson, United States Attorney, on the brief), Office of the United States Attorney, Tulsa, Oklahoma, for Plaintiff-Appellee.

_____

Before **HARTZ**, **BALDOCK**, and **BACHARACH**, Circuit Judges.

_____

**HARTZ**, Circuit Judge.

_____

Defendant Joshua David Slinkard raises a single argument on appeal: that the

district court plainly erred when it conclusively announced his sentence before permitting

him to allocute. We agree. We hold that the court's pre-allocation statement was a definitive announcement of sentence, in violation of Fed. R. Crim. P. 32(i)(4)(A)(ii) and our precedent. Exercising appellate jurisdiction under 28 U.S.C. § 1291, we reverse and remand for resentencing.

## I.    BACKGROUND

In 2011 Mr. Slinkard pleaded guilty in Oklahoma state court to child sex abuse, lewd molestation, and possession of child pornography. The state court sentenced him to 30 years in prison. But in May 2021 the State vacated Mr. Slinkard's conviction for lack of subject-matter jurisdiction, in accordance with the United States Supreme Court's decision in *McGirt v. Oklahoma*, 140 S. Ct. 2452 (2020). Mr. Slinkard was then indicted in the United States District Court for the Northern District of Oklahoma on two counts of aggravated sexual abuse of a minor in Indian country, in violation of 18 U.S.C. §§ 1151, 1153, and 2241(c), and one count of possession of child pornography, in violation of 18 U.S.C. §§ 2252(a)(4) and 2252(b)(2). He pleaded guilty on all three counts without the benefit of a plea bargain.

Under 18 U.S.C. § 2241(c) the sentencing range for each of Mr. Slinkard's counts of aggravated sexual abuse was 30 years to life. Under 18 U.S.C. § 2252(a)(4) and (b)(2) the sentencing range for his child-pornography count was imprisonment up to 20 years. The presentence investigation report (PSR) prepared for the court by the probation office computed Mr. Slinkard's advisory guideline sentence as life in prison, based on his total offense level of 43 and criminal-history category of II. Mr. Slinkard raised some

2

objections to the PSR's proposed advisory guideline sentence, but they were rejected by the probation office.

The district court held Mr. Slinkard's sentencing hearing on March 3, 2022. After adopting the factual recitations of the PSR and confirming Mr. Slinkard's advisory guideline sentence, the district court recited the sentencing factors set forth in 18 U.S.C. § 3553(a) and offered defense counsel the opportunity to be heard on the application of those factors in Mr. Slinkard's case. Defense counsel asked the court to consider an oral motion for a downward variance based in part on Mr. Slinkard having already served 12 years in state prison. The government requested a life sentence.

The district court then said:

> Based upon the information provided by the parties, I will not vary from the advisory guideline level as the factors fail to separate this defendant from the minerun of similarly situated defendants. The court finds that this defendant is a repeated and dangerous sex offender. There is no way in good conscience that I could ever allow this defendant to be among the public or near any child.

R., Vol. III at 66. The court asked Mr. Slinkard if he wished to make a statement, but he declined. After the government made a statement on behalf of the victim, the court imposed a sentence of two terms of life in prison and one term of 240 months, all to run concurrently.

## II.    ANALYSIS

### a. Definitive announcement of sentence before allocution

Federal Rule of Criminal Procedure 32 codifies a defendant's right to speak at sentencing: "Before imposing sentence, the [district] court must . . . address the defendant

personally in order to permit the defendant to speak or present any information to mitigate the sentence." Fed. R. Crim. P. 32(i)(4)(A)(ii). This provides a defendant with two rights: (1) "to make a statement in his own behalf" and (2) "to present any information in mitigation of punishment." *Green v. United States*, 365 U.S. 301, 304 (1961) (plurality opinion) (internal quotation marks omitted). The second right incorporates the "opportunity to argue for a variance from the Guidelines range," *United States v. Jarvi*, 537 F.3d 1256, 1262 (10th Cir. 2008), regardless of whether the court has already denied a motion to vary, *see United States v. Mendoza-Lopez*, 669 F.3d 1148, 1150, 1152 (10th Cir. 2012), *overruled on other grounds by United States v. Bustamante-Conchas*, 850 F.3d 1130, 1143–44 (10th Cir. 2017) (en banc).

The right of allocution does not require the sentencing judge to have a totally open mind until the defendant has allocuted. We have recognized that a district court will "frequently approach sentencing with at least some idea of what [sentence it] intend[s] to impose." *United States v. Valdez-Aguirre*, 861 F.3d 1164, 1165 (10th Cir. 2017). Indeed, it is not improper for the court to convey its tentative views on a proper sentence, a disclosure that may assist the defendant in framing a statement. *See Mendoza-Lopez*, 669 F.3d at 1150, 1152 (it was not error for court to say before allocution that it was its "*intention* to sentence within th[e] Guideline range" (emphasis added and internal quotation marks omitted)); *see also United States v. Theis*, 853 F.3d 1178, 1182–83 (10th Cir. 2017) (no plain error in sentencing court's announcement that it would allow "any statement [the defendant] would like to make to the court after it announced proposed

4

findings of fact and a tentative sentence" (brackets and internal quotation marks omitted)).

At the same time, however, offering the defendant the opportunity to allocute should not be an empty gesture. Perhaps it is impossible to prevent the sentencing court from making up its mind before hearing from the defendant. But we can prohibit the court from conveying to the defendant that allocuting would be a waste of time. For the sentencing court to do so not only discourages allocution but also can "subvert[] other public values," *Bustamante-Conchas*, 850 F.3d at 1142, by suggesting that the process is unfair, *see id.* at 1136 ("courts must continue to be cautious to avoid the appearance of dispensing assembly-line justice" (internal quotation marks omitted)).

Thus, we prohibit not only barring the defendant from making any statement at all, *see id.* at 1137–38, or from speaking with respect to a particular aspect of the sentence, *see Mendoza-Lopez*, 669 F.3d at 1150, 1152 (court prohibited defendant from arguing for downward variance from guidelines range), but we have also stated that a court "violates th[e] right to allocute when it *definitively* announces the defendant's sentence before giving him an opportunity to speak, and fails to communicate to the defendant that it will genuinely reconsider the sentence in light of his remarks," *Theis*, 853 F.3d at 1182 (emphasis added). *See also United States v. Landeros-Lopez*, 615 F.3d 1260, 1268 (10th Cir. 2010) ("By definitively announcing [the defendant's] sentence before providing him with an opportunity to speak on his own behalf, the district court prematurely adjudged his sentence" and "violated" the defendant's "right of allocution"); *id.* at 1266 (the court "must take steps to communicate effectively to the defendant that, through his statement,

5

he has a meaningful opportunity to influence the sentence" (internal quotation marks omitted)).

On occasion it may be a close call whether the court has conveyed that allocution will be to no avail. But not here. After denying Mr. Slinkard's motion for a downward variance, the district judge stated: "There is *no way* in good conscience that I could *ever* allow this defendant to be among the public or near any child." R., Vol. III at 66 (emphasis added). The court's next words were: "Will defendant and his counsel approach the podium. Mr. Slinkard, do you wish to make a statement?" *Id.*

The government argues that the district court's statement was merely tentative and that it "conveyed a willingness to consider additional information before finalizing the sentence." Aplee. Br. at 9. This case is like *Theis*, it argues, because there the court stated a tentative sentence and then invited the defendant to address the court on his own behalf. *See* 853 F.3d at 1182–83. The comparison is too strained. We see nothing tentative in the court's remarks here. Even a lexicographer would have to say that the court had made up its mind. The OED defines *no way* as "'[u]nder no circumstances', 'absolutely not.'" *No Way*, Oxford English Dictionary (3d ed. 2003). And it defines *ever* as "[a]t any time; . . . on any occasion; in any circumstances." *Ever*, Oxford English Dictionary (3d ed. 2018). When the district court indicated that there was *no way* it could *ever* allow Mr. Slinkard to have contact with the public, it unambiguously conveyed that it could not allow him to leave prison "at any time; . . . on any occasion; in any circumstances."

The government nonetheless argues that because the court did not use "magic words"—such as "it is and will be the judgment of this Court"— to announce a life

6

sentence, there was no definitive statement. Aplee. Br. at 10; *see Landeros-Lopez*, 615 F.3d at 1265, 1268 (quoting that language as violating the defendant's right to allocution because it "effectively communicated to [the defendant] that his sentence had already been determined, and that he would not have a meaningful opportunity to influence that sentence through his statements to the court"). We are not persuaded. The district court's "no way . . . ever" was at least as effective in communicating a final decision. If its language did not contain magic words, it was nonetheless definitive.

It is rarely a fault for an appellate court to rely on common sense rather than magic words in assessing the performance of a lower court. We do not require sentencing courts to use magic words in supporting the sentences they hand down. *See, e.g.*, *United States v. Kelley*, 359 F.3d 1302, 1305 (10th Cir. 2004) ("We do not require a ritualistic incantation to establish consideration of a legal issue, nor do we demand that the district court recite any magic words to show us that it fulfilled its responsibility to be mindful of the [§ 3553(a)] factors that Congress has instructed it to consider." (internal quotation marks omitted)). It would be unreasonable of us to require them in this context, to the detriment of a defendant's otherwise meritorious claim. We therefore decline the government's invitation to hold that "magic words" are required to constitute a "definitive announcement," nor will we feign ignorance of how this or any defendant would necessarily interpret a statement by the court.

To call the district court's statement "definitive" in the context of allocution error is not to say that it was a binding, final imposition of sentence. "The sentence orally pronounced from the bench is *the* sentence," *United States v. Villano*, 816 F.2d

7

1448, 1451 (10th Cir. 1987) (en banc) (emphasis added), and "an [unambiguous] oral pronouncement of sentence from the bench controls over [contradictory] written language" in the judgment, *United States v. Barwig*, 568 F.3d 852, 855 (10th Cir. 2009) (ellipsis and internal quotation marks omitted). *See United States v. Dahda*, 852 F.3d 1282, 1298 (10th Cir. 2017) (affirming amount owed in forfeiture based on oral pronouncement despite silence as to forfeiture in written judgment). But we need not decide whether the definitive statement by the district court amounted to imposition of the sentence, which has consequences unrelated to allocution, such as starting the 14-day clock for correction of "arithmetical, technical, or other clear error" under Fed. R. Crim. P. 35(a). The guiding principle in the present context is whether the statement definitively communicates to the defendant that allocution is futile, thereby depriving the defendant of a meaningful opportunity to address the court. The district court's statement to Mr. Slinkard, even if not a "sentence," communicated that futility.

We therefore must hold that the district court erred in definitively announcing Mr. Slinkard's life sentence before allocution.

### b. Plain error

To prevail on this appeal, however, it is not enough for Mr. Slinkard to point to an error by the district court. Because he did not object below to the district court's pre-allocution statement, he must demonstrate plain error. *See United States v. Starks*, 34 F.4th 1142, 1156 (10th Cir. 2022). To satisfy the plain-error standard for reversal, he must demonstrate: "(1) error, (2) that is plain, which (3) affects substantial rights, and

8

which (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.* at 1157 (internal quotation marks omitted).

We have established above that there was error in Mr. Slinkard's sentencing. We need not dwell long on the other requirements. For error to be "plain" it must be beyond "reasonable dispute" that it is "contrary to well-settled law" of this court or the United States Supreme Court. *Id.* (internal quotation marks omitted). Our precedent prohibits the definitive or conclusive announcement of a defendant's sentence before he allocutes. *See Valdez-Aguirre*, 861 F.3d at 1165; *Theis*, 853 F.3d at 1182; *Mendoza-Lopez*, 669 F.3d at 1151; *Landeros-Lopez*, 615 F.3d at 1268. The district court's statement was unambiguously definitive. The error is thus plain.

"To satisfy the third prong of plain-error review, a defendant generally must demonstrate that an error was prejudicial, meaning that there is a reasonable probability that, but for the error claimed, the result of the proceeding would have been different." *Bustamante-Conchas*, 850 F.3d at 1138 (internal quotation marks omitted). A "reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* (internal quotation marks omitted). We have determined that "a defendant who shows he has been denied the right to allocute has met his burden of demonstrating prejudice absent some extraordinary circumstance." *Id.* at 1139. One obvious "extraordinary circumstance" is when the defendant has already received the lowest possible sentence, because there is a statutory mandatory minimum or a specified term of imprisonment was included in a Fed. R. Crim. P. 11(c)(1)(C) plea agreement already accepted by the sentencing court. *See id.* at 1140. Here, however, the government does

not identify any extraordinary circumstance; it simply points out that Mr. Slinkard's conduct was atrocious and the sentence was within the guideline range. But even "a sentence at the bottom of a Guidelines range does not qualify as an exceptional circumstance justifying a deviation from the general rule." *Id.* at 1141. And the possibility of a less severe sentence is obvious when one observes that Mr. Slinkard's state-court sentence for essentially the same misconduct was 30 years.

Finally, our precedents compel the conclusion that the allocution error in this case satisfies the fourth prong of plain-error review because it "seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Starks*, 34 F.4th at 1157 (internal quotation marks omitted). We have stated that "[e]ven in instances in which a significantly lesser sentence is unlikely, a denial of allocution subverts . . . public values." *Bustamante-Conchas*, 850 F.3d at 1142. It is therefore "rare" that "an allocution error does not satisfy the fourth prong." *Id.* To be sure, "remand may not be warranted if a defendant was not wholly denied the opportunity to allocute." *Id.* at 1143. But, as the government recognizes, this exception applies only "if the defendant was offered a meaningful opportunity to address the court and present mitigating circumstances." *Id.*; *see Theis*, 853 F.3d at 1182–83. We do not think that in this context an opportunity is meaningful if failure is foreordained. And that was the message delivered by the district

court when it stated that there was no way it could sentence Mr. Slinkard to less than life imprisonment.

### c. Proceedings on remand

There is one remaining issue. We think it prudent to order that resentencing be conducted by another judge.

This is a course we do not take lightly. We "remand with instructions for assignment of a different judge only when there is proof of personal bias or under extreme circumstances." *Mitchell v. Maynard*, 80 F.3d 1433, 1448 (10th Cir. 1996). We are confident that the views of the original judge were based on a conscientious, unbiased view of the facts without any personal prejudice against Mr. Slinkard. But "it is not solely the reality of actual bias or prejudice but also the appearance of impropriety that we must guard against." *Id.* at 1450.

In the absence of bias we consider three factors in determining whether reassignment is warranted:

> (1) whether the original judge would reasonably be expected upon remand to have substantial difficulty in putting out of his or her mind previously-expressed views or findings determined to be erroneous or based on evidence that must be rejected, (2) whether reassignment is advisable to preserve the appearance of justice, and (3) whether reassignment would entail waste and duplication out of proportion to any gain in preserving the appearance of fairness.

*Id.*

All three factors weigh in favor of reassignment. The third is the easiest to assess. Assignment to another judge in this case will not impose a substantial additional burden on the judiciary. *See United States v. Crooks*, 997 F.3d 1273, 1280 n.10 (10th Cir. 2021).

As for the first factor, the words at sentencing suggest such a strong personal belief regarding what punishment is appropriate that the judge may have considerable difficulty changing his mind on remand. *See United States v. Evans*, 677 F. App'x 469, 475 (10th Cir. 2017) ("we could reasonably expect our disposition to cause difficulty on remand" given original judge's statements that it was unfortunate that the computation of financial loss (for the purpose of assessing the offense level for the fraud committed) could not be higher and that Americans "do not take white collar crime seriously enough" (internal quotation marks omitted)); *United States v. Avery*, 807 F. App'x 74, 76 (2d Cir. 2020) (after vacating sentence for allocution error, reassigning on remand because, "[g]iven the sentencing judge's repeated and unwavering statements during the hearing that [the defendant] would be sentenced to a total of 120 months' imprisonment, we believe that the judge would have substantial difficulty in putting such a view out of her mind" (internal quotation marks omitted)). !

Most important here is the second factor. Reassignment will help preserve the appearance of justice, which is an essential purpose of the right of allocution. "We are mindful . . . of the imperative to preserve not only the reality but also the appearance of the proper functioning of the judiciary as a neutral, impartial administrator of justice." *United States v. Chapman*, 915 F.3d 139, 147 (3d Cir. 2019) (internal quotation marks omitted). Because the original judge conclusively declared his view of the proper sentence for Mr. Slinkard before inviting him to make a statement, the parties and the public might believe the judge unwilling to consider Mr. Slinkard's statement on remand. Although we do not doubt the original judge's willingness to follow our instructions on

remand, we think reassignment will "preserve the appearance of justice" and ensure that the fairness of future proceedings is beyond doubt. *See United States v. Cozad*, No. 22-3050, 2022 WL 2288719, at *3 (10th Cir. June 24, 2022) ("it would be beneficial for another district judge to apply a fresh perspective to avoid the appearance that the new sentence is tainted" by previous considerations).

## III.    CONCLUSION

We **REVERSE** the sentence imposed by the district court and **REMAND** for resentencing in accordance with this opinion.