**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**August 12, 2025**

**Christopher M. Wolpert**
**Clerk of Court**

<u>PUBLISH</u>

### UNITED STATES COURT OF APPEALS

### FOR THE TENTH CIRCUIT

———————————————————

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

JEREMY DUSTIN PAPKE,

    Defendant - Appellant.

No. 24-5094

———————————————————

**Appeal from the United States District Court**
**for the Northern District of Oklahoma**
**(D.C. No. 4:22-CR-00084-JFH-1)**

———————————————————

Neil D. Van Dalsem, Assistant Federal Public Defender, Office of the Federal Public Defender, Muskogee, Oklahoma (Scott A. Graham, Federal Public Defender, with him on the briefs), for Defendant-Appellant.

Steven J. Briden, Assistant United States Attorney, Office of the United States Attorney, Tulsa, Oklahoma (Clinton J. Johnson, United States Attorney, with him on the brief), for Plaintiff-Appellee.

———————————————————

Before **McHUGH**, **EID**, and **FEDERICO**, Circuit Judges.

———————————————————

**McHUGH**, Circuit Judge.

———————————————————

Defendant-Appellant Jeremy Dustin Papke appeals from a district court's rejection of two plea bargains proposed to resolve criminal charges stemming from Mr. Papke's sexual abuse of a family member. Mr. Papke was indicted on three

counts for sexual abuse of a minor. Each count was punishable by a different sentence: Count One carried a maximum sentence of fifteen years, Count Two carried a maximum of two years, and Count Three carried a minimum of fifteen years and a maximum of life imprisonment.

The Government and Mr. Papke eventually entered into a plea agreement under which he agreed to plead guilty to Count Three, the Government agreed to move to dismiss Counts One and Two, and the parties stipulated to a maximum sentence of fifteen years. The district court rejected that agreement, finding a fifteen-year sentence would insufficiently punish Mr. Papke for his conduct. The parties then entered into a second plea agreement under which Mr. Papke agreed to plead guilty to Counts One and Two and in exchange, the Government would move to dismiss Count Three. The district court rejected that plea agreement as well, finding it improperly limited the court's sentencing discretion by leaving two counts with a maximum statutory sentence of seventeen years. Finally, the parties entered a third plea bargain under which Mr. Papke agreed to plead guilty to all three counts and the parties stipulated to a maximum sentence of 235 months. The district court accepted the third plea agreement and sentenced Mr. Papke to 235 months, just shy of twenty years' incarceration.

On appeal, Mr. Papke argues the district court abused its discretion by rejecting the first two plea agreements, and he asks that the case be assigned to a new judge on remand. The Government disputes that the court wrongly rejected the first plea agreement, but it agrees that the district court abused its discretion by rejecting

2

the second plea because the plea was a "charge bargain" that the district court had limited discretion to reject.

We hold that although the district court acted within its discretion by rejecting the first plea agreement, it abused its discretion by rejecting the second. The second plea agreement was a charge bargain under which the Government agreed to dismiss one charge in exchange for Mr. Papke's guilty plea to two other charges, and it did not contain any agreement as to the sentence. This type of plea bargain represents an exercise of prosecutorial discretion to which district courts must show deference to preserve the doctrine of separation of powers. Because the district court did not show due deference to the Government's reasons for entering the second plea agreement here, we remand to the district court with instructions to vacate Mr. Papke's convictions and sentence and we remand for further consideration of the second plea agreement. After due consideration, we instruct the district court to afford the appropriate deference to charge pleas in the future but we do not reassign the case to a different judge.

## I.   BACKGROUND

On March 23, 2022, a grand jury returned a three-count indictment against Mr. Papke in the U.S. District Court for the Northern District of Oklahoma. Count One alleged that in September 2021, Mr. Papke "knowingly engaged in a sexual act with L.P., a child . . . who had attained the age of 12 years, but had not attained the age of 16 years, and was at least four years younger than" Mr. Papke, in violation of 18 U.S.C. §§ 1151, 1153, and 2243(a). ROA Vol. I at 15. Count Two alleged that in

3

September 2021, Mr. Papke "knowingly engaged in, and attempted to engage in, sexual contact with L.P.," in violation of 18 U.S.C. §§ 1151, 1153, and 2244(a)(3). *Id.* at 16. And Count Three alleged that in September 2021, Mr. Papke "knowingly persuaded, induced, enticed, and coerced, and attempted to persuade, induce, entice, and coerce, L.P. . . . to engage in [] sexual activity," in violation of 18 U.S.C. §§ 1151, 1152, and 2422(b). *Id.* at 17. Information in the presentence investigation report ("PSR")—which Mr. Papke did not dispute—showed that he began abusing L.P. in 2015, when she was only seven years old.

### A.     First Plea Agreement

On June 17, 2022, Mr. Papke and the Government reached a plea agreement (the "First Plea"). The parties entered into the plea agreement under Federal Rule of Criminal Procedure 11(c)(1)(C), which allows parties in a criminal case to "agree that a specific sentence or sentencing range is the appropriate disposition of the case." If a district court accepts a Rule 11(c)(1)(C) plea, the parties' agreed-upon sentence is binding on the district court. Fed. R. Crim. P. 11(c)(1)(C).

In the First Plea, Mr. Papke agreed to plead guilty to Count Three, and in return the Government would move to dismiss Counts One and Two. The parties also agreed that the district court could sentence Mr. Papke to no less than thirteen years and no more than fifteen years. A magistrate judge recommended acceptance of the First Plea and ordered U.S. Probation and Pretrial Services to prepare a PSR. The PSR calculated a recommended sentencing range under the U.S. Sentencing

Commission Guidelines of 151 to 188 months, based on the severity of Mr. Papke's conduct and his lack of prior criminal history.

The district court conducted a sentencing hearing on August 23, 2023. At the outset, the district court told the parties that it had "concerns" about the First Plea and asked the Government if "the victim [was] consulted in the context of the plea deal that was struck here?" ROA Vol. I at 62. The Government confirmed that it had consulted both L.P. and her father regarding the plea agreement and told the court they both supported it. The Government explained it had entered the First Plea to "avoid having to put the child victim through the crucible of a trial and testimony and all the uncertainty" involved in a trial. *Id.* at 63. Next, L.P. spoke to the court and described how Mr. Papke's actions had scarred and harmed her.

After L.P. gave her statement, the district court stated it was concerned about "whether this plea agreement is sufficient considering the nature of the offense here." *Id.* at 67. The court then asked whether L.P. and her family wanted the court "to accept this deal," and the Government detailed prior conversations with L.P. and her family indicating that they supported the First Plea. *Id.* at 67–68. The Government also noted that the stipulated sentencing range was within the Guidelines range, and stated that, in its opinion, the stipulated length "of imprisonment . . . paired with lifetime supervised release is appropriate." *Id.* at 68. The court then heard from L.P.'s father, who spoke about the severe harm Mr. Papke had caused and expressed that, in his view, Mr. Papke should spend the rest of his life in prison for his crimes. Even so, L.P.'s father asked the court to accept the First Plea because he believed "a trial

would be really hard on" L.P., and her family wanted her to "start healing." *Id.* at 71. Finally, the court directly asked L.P. if she supported the First Plea, and she confirmed that she wanted the court to accept it.

After taking a short recess, the court told the parties it had decided to reject the First Plea because it did not believe the deal "adequately reflect[ed] the seriousness of the offense and . . . would undermine the purposes of sentencing." *Id.* at 72–73. The court acknowledged that L.P. and her family wanted the court to "accept the agreement." *Id.* at 75. But "at the end of the day," the court explained, it was "the court that must live with the agreement, and certainly Mr. Papke must live with it as well." *Id.*. The court also emphasized that it did not take sentencing decisions "lightly," even though in the court's view "when counsel are done with the [case], [they] move on to the next case." *Id.*

On September 18, 2023, the parties filed a joint motion to reconsider, in which they emphasized that L.P. and her father supported the First Plea. The parties told the court that L.P. was dealing with serious mental health challenges and that her father was worried that the specter of testifying at trial might amplify some of L.P.'s struggles. The parties also noted the First Plea was informed by their evaluation of the risks inherent in a jury trial. Thus, the parties asked the court to accept the First Plea.

Several days later, the district court continued the sentencing hearing to address the motion to reconsider. The court noted the motion did not contain "any additional information that [the court] didn't already know." ROA Vol. I at 78. The

6

Government told the court that it had concerns about L.P.'s testimony because she had made some inconsistent statements and had forgotten some facts. The Government also noted that because L.P. had experienced suicidal ideations and at times engaged in self-harm, it had "serious concerns about the mental and physical impact that a trial and sitting in the witness stand would have on this victim." *Id.* at 80.

The district court responded that, from what it had observed at the initial sentencing hearing, it believed L.P. "was very capable of testifying at trial." *Id.* at 82. But the court acknowledged that it had not "visited with her like" the Government had and that it understood this concern. *Id.* The court also remarked that regardless of whether the stipulated sentence was within the Guidelines range, the court was not required "to sentence only within the [G]uidelines" and had discretion to impose consecutive sentences for each count, regardless of the Guidelines range. *Id.* at 83–84. The court added:

> And as I said before, counsel can make an agreement and they might be able to live with the agreement but it's not your sentence. There's two people that live with the sentence following a sentencing, the defendant and me. And we live with that and you move on to the next case.
>
> And as I said before, it seems that your office has fallen in love with the 11(c)(1)(C). I've said it before. And we had a visiting judge here not too long ago that in one day rejected three 11(c)(1)(C)s. So you can continue to do that and you can try to make this sentence your sentence, or you can give me some latitude. That's what I have to say about it.

*Id.* at 87.

The court then told the parties that it would not accept the plea, stating that the court's decision had not changed and it could not "live with" the sentence stipulated in the First Plea. *Id.* at 89. Mr. Papke's counsel stated on the record that the court's "rejection of the plea agreement [was] procedurally" and "substantively unreasonable." *Id.* The court asked counsel if she could cite "any case in this district" involving "a sentence that is anywhere close to this for any circumstances that are similar to this?" *Id.* at 89–90. Unable to cite such cases, counsel asserted that the court's "dissatisfaction" with the stipulated sentence was not a sufficient reason to reject a plea agreement. *Id.* at 90. In response, the district court elaborated its reasons for rejecting the First Plea: the stipulated sentencing range would not "reflect the seriousness of the offense including the relevant conduct," "be adequate to deter the defendant," "promote the respect for the law," "provide just punishment for the offense," nor protect "the public from further crimes by this defendant given the length of time in which he was comfortable abusing the child." *Id.* at 91. At this point, Mr. Papke withdrew his guilty plea and the district court reset the case for trial. *Id.* at 91–92.

## B.    *Second Plea Agreement*

On November 3, 2023, the parties entered into a second plea agreement (the "Second Plea"). Under this agreement, Mr. Papke agreed to plead guilty to Counts One and Two, and in exchange the Government agreed to dismiss Count Three. The Second Plea contained no conditions or agreements regarding the sentence the district court could impose. The plea noted that Count One carried a maximum sentence of

8

fifteen years, Count Two carried a maximum sentence of two years, and the district court had discretion to impose any sentence up to the statutory maximum for both counts and to run the sentences consecutively. Thus, the Second Plea authorized a maximum sentence of seventeen years, a two-year increase from the maximum sentence of fifteen years in the First Plea. At a change of plea hearing, a magistrate judge recommended acceptance of the Second Plea. And in an updated PSR, a probation officer calculated a Guidelines range of 188 to 235 months' imprisonment.

Prior to the sentencing hearing, the district court sua sponte appointed a guardian ad litem ("GAL") for L.P. After interviewing L.P., L.P.'s family, and counsel for both parties, the GAL submitted a report to the court. The GAL told the court that L.P. "would love for the court to sentence Mr. Papke to [seventeen] years," but asked the court "to sentence [him] to at least [fifteen] years and a lifetime supervision." ROA Vol. II at 18. The GAL's report also discussed many challenges L.P. had faced while trying to cope with and heal from Mr. Papke's abuse. The GAL further told the court that "L.P. wants this case over and would request if there is any way the sentencing can be moved up so L.P. can get some closure, she would greatly appreciate it." *Id.* at 18.

On May 22, 2024, the district court conducted a second sentencing hearing to consider the Second Plea. The court adopted the unobjected-to PSR and found that the Guidelines range was 188 to 235 months. The court surveyed the history of the case and its reasons for rejecting the First Plea, noting that "the record's pretty clear on where [the court] was at the time [of] that plea agreement." ROA Vol. I at 138.

9

The court expressed concerns about the Second Plea and stated it was "questioning what's going on here, to say the least." *Id.* The court stated that it believed the sentence contemplated under the Second Plea was "light under the circumstances." *Id.* at 139.

In its statement to the court, the Government explained that the Second Plea was a "charge bargain" under Federal Rule of Criminal Procedure 11(c)(1)(A). The Government cited and discussed two Tenth Circuit cases demonstrating that the Second Plea was a charge bargain and that "the court's discretion to reject [charge bargains] is more narrow." *Id.* at 139–40 (first citing *United States v. Robertson*, 45 F.3d 1423 (10th Cir. 1995), then citing *United States v. Vanderwerff*, 788 F.3d 1266 (10th Cir. 2015)). The Government then explained its reasons for entering into the Second Plea: (1) the plea would save L.P. from the rigors of cross-examination at trial; (2) L.P. supported the plea; (3) the prosecution had strategically chosen not to take the case to trial based on its evaluation of the evidence; and (4) the Government believed a recent published opinion, *United States v. Streett*, 83 F.4th 842 (10th Cir. 2023), would make it difficult to prove Count Three beyond a reasonable doubt. Mr. Papke's counsel also argued the court should accept the Second Plea to provide finality, both for Mr. Papke and L.P.'s family. And last, the GAL told the court that L.P. hoped it would accept the Second Plea because she "wants some finality." *Id.* at 145.

After taking a recess to review the cases the Government had cited, the district court told the Government it was "not concerned at all about the *Streett* case." *Id.*

10

at 147. Instead, the court was "concerned about making sure that [its] decision is appropriate in terms of justice," although it was "very sympathetic to the victim" because "the case has been [dragged] out for so long." *Id.* The court was particularly troubled by the allegations in the PSR that Mr. Papke had abused L.P. for "as much as six years," and that the Second Plea did "not adequately reflect the gravity of [his] conduct." *Id.* at 148. The court also chastised the parties for entering into another plea agreement, stating it could not "have been any more clear about where we were headed in this case, but nevertheless [the parties] wasted a couple more months." *Id.* at 147. The court then rejected the Second Plea "pursuant to . . . Rule 11(c)(3)(A)," finding that it "would not meet the requirements and objectives set forth in [] 18 U.S.C. § 3553(a)." *Id.* at 148–49. Next, the court affirmatively withdrew "the plea on behalf of" Mr. Papke, because the court would not be "proceeding with this plea agreement." *Id.* at 149. At the close of the hearing, the court set a trial date approximately two months later, in mid-July.

### C.    *Third Plea Agreement*

On June 14, 2024, the parties entered into a third plea agreement under Rule 11(c)(1)(C) (the "Third Plea"). In the Third Plea, Mr. Papke agreed to plead guilty to all three counts, and in return the Government stipulated to a sentence of 180 months for Count One, 24 months for Count Two, and 235 months for Count Three, with all sentences to run concurrently. Under the Third Plea, therefore, the maximum sentence Mr. Papke could receive was 235 months, approximately nineteen and a half years.

The same day, the district court conducted a change of plea hearing for the Third Plea at which it accepted Mr. Papke's plea, while reserving its "acceptance of the plea agreement until the time of sentencing." ROA Vol. III at 85. During the hearing, the GAL told the court that she had stayed in touch with L.P. and her family "through all the stages of the different plea agreements," and that they supported the Third Plea. ROA Vol. III at 83–84. The GAL relayed that L.P. "had an emotional relapse and breakdown" after the district court rejected the Second Plea, and that L.P. had "cried herself to sleep" the prior night because she was worried the court would also reject the Third Plea. *Id.* at 84.

Mr. Papke's counsel made a statement preserving Mr. Papke's "objection to the court's rejection of the" Second Plea, and counsel noted Mr. Papke had agreed to the Third Plea only because the court had rejected the prior agreement. *Id.* at 86–87. Counsel argued "[i]t was an error and an abuse of discretion for the court to reject the" Second Plea because it "was a charged bargain" and the district "court only has limited discretion to reject a charged bargain." *Id.* at 87. In counsel's view, the court had unreasonably "interfere[d] with the charging decisions and prosecutorial discretion of the United States Attorney's Office in this case." *Id.* Finally, counsel noted that the district court had failed to "make adequate factual findings supporting its conclusion that the [Second Plea] resulted in an unreasonable resolution of this case." *Id.* The court responded, "Thank you, counsel. I realize you're making your objection for the record but the court's response is that I entirely disagree." *Id.* at 88.

A week later, the district court sua sponte issued an order "to summarize the existing record and address misapprehensions by" both parties. ROA Vol. I at 178. The court noted that it had "already sufficiently articulated" why it had rejected the First and Second Pleas. *Id.* at 182. But the court said that "it seems the parties weren't listening" to its prior articulations, and thus it had issued a written order "so that no party may claim ignorance." *Id.* at 182. The court acknowledged that the Government had entered both pleas because it believed a quick disposition of the case was in L.P.'s best interests and it wanted to avoid retraumatizing L.P. by making her testify at trial. The court stated it was "sympathetic" to L.P.'s concerns and acknowledged that the Government had a clearer picture of her ability to testify at trial, although the court stated it still believed she could ably testify at trial "based on her courtroom demeanor and the statement she read into the record." *Id.* at 183. The court also acknowledged and dismissed the Government's prior concern that it would have trouble proving Count Three in light of recent Tenth Circuit precedent. *See id.* at 183 & n.4. And the court again expressed disapproval of the Government's agreement to a plea under Rule 11(c)(1)(C), noting that "it seems that [the U.S. Attorney's Office] has fallen in love with the 11(c)(1)(C) [bargain]." *Id.*

The court next explained that although "[t]he parties construe their bargains as charge bargains" that the court had less discretion to reject, the parties in fact had "misapprehend[ed] the Tenth Circuit's taxonomy of plea bargains." *Id.* at 184. In the court's view, the First and Second Pleas were both "hybrid bargains" that it had broad discretion to reject. *Id.* The court opined that the First Plea was a hybrid

13

bargain because it required the Government to dismiss Counts One and Two while also "limit[ing] the Court's sentencing power by dictating a sentencing range of 156–180 months." *Id.* And the court ruled that the Second Plea "was no better" because it "limit[ed] the Court's sentencing power by dismissing the count with the greatest exposure and" leaving "two counts that, if run consecutively at their statutory maximums, would total 204 months." *Id.*

The court explained that both pleas were "insufficient for the offense conduct, factoring in all relevant conduct and history leading up to the one-month window charged in the indictment." *Id.* at 185. The court also conveyed that "yearslong sexual abuse of minor children by adults in positions of authority is sadly too common in Northeastern Oklahoma." *Id.* at 186. Based on the court's experience sentencing similar criminal defendants, it believed the First and Second Pleas "would have created—not prevented—a sentencing disparity among similarly situated defendants who have been sentenced in this Court." *Id.* In closing, the court quoted precedent stating that its "refusal to permit the parties to bind its sentencing discretion constitutes the exercise of sound judicial discretion," *id.* (quoting *Robertson*, 45 F.3d at 1439), and it noted in passing that "[t]he parties apparently missed this sentence . . . when they cited *Robertson* as support for their proposition that the Court had exceeded its discretion," *id.* at 186 n.6.

On August 9, 2024, the district court conducted a final sentencing hearing. With no further arguments from counsel, the court adopted the Third Plea and sentenced Mr. Papke to 180 months in custody for Count One, 24 months in custody

14

for Count Two, and 235 months in custody for Count Three, all to run concurrently. The court also sentenced Mr. Papke to supervised release for life on each count.

Immediately after the sentencing hearing concluded, the district court's courtroom deputy told Mr. Papke's counsel that the district court was updating its "Chamber Rules to provide that [it] would no longer consider Rule 11(c)(1)(C) plea agreements." Appellant's Br. at 22–23. And counsel attached to Mr. Papke's opening brief an email that counsel subsequently received from the courtroom deputy that contained the district court's update rules. *See* Appellant's Br. Attach. 2. According to that email, the only "major change" to the Chamber Rules was that the court would "no longer accept plea agreements made pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C)." *Id.* at 1, 5.

## II.     JURISDICTION

The district court had jurisdiction over the federal charges against Mr. Papke under 18 U.S.C. § 3231. Mr. Papke timely filed a notice of appeal of the district court's August 12, 2024 judgment on August 13, 2024. We have jurisdiction under 28 U.S.C. § 1291.

## III.     LEGAL STANDARDS

### A.     *Standard of Review*

"We review a district court's decision not to accept a plea agreement for abuse of discretion." *Vanderwerff*, 788 F.3d at 1271. "A district court abuses its discretion if its adjudication of a claim is based upon an error of law." *United States v. Hurst*, 94 F.4th 993, 1001 (10th Cir. 2024) (quotation marks omitted). If "a district court

15

predicates its ruling on an improper and irrelevant factor, this error provides a strong indication that the district court abused its discretion." *Vanderwerff*, 788 F.3d at 1271 (internal quotation marks omitted). Similarly, it is an abuse of discretion for a district court to rely on "a clearly erroneous finding of fact." *United States v. Battle*, 706 F.3d 1313, 1317 (10th Cir. 2013).

### B.    Legal Standards for Plea Bargains

Under Federal Rule of Criminal Procedure 11, "[a]n attorney for the government and the defendant's attorney . . . may discuss and reach a plea agreement. The court must not participate in these discussions." Fed. R. Crim. P. 11(c)(1). Rule 11 authorizes four types of plea bargains: (1) "charge bargains" under Rule 11(c)(1)(A), which are "predicated on the dismissal of some counts"; (2) "sentence bargains" under Rule 11(c)(1)(B), which are "predicated either on the [government's] recommendation of or agreement not to oppose a particular sentence"; (3) sentence bargains under Rule 11(c)(1)(C), which are "predicated on the guarantee of a particular sentence"; and (4) "hybrid bargains containing part charge and part sentence bargains." *Robertson*, 45 F.3d at 1437.

A "district court enjoys substantial discretion in deciding whether to accept or reject a plea agreement under Rule 11." *United States v. Rakes*, 510 F.3d 1280, 1286 (10th Cir. 2007). But "different types of plea bargains implicate different types of discretion and power." *Robertson*, 45 F.3d at 1437. District courts "enjoy considerable discretion in their consideration of sentence bargains," *Vanderwerff*, 788 F.3d at 1271, because the "imposition of sentence is a matter of discretion for the

16

district court" and the "prosecution's role in sentencing bargains is strictly advisory," *Robertson*, 45 F.3d at 1437. Thus, sentence bargains necessarily "infringe on the sentencing discretion of district courts," and a district court may properly reject a particular sentence or hybrid bargain to preserve "its discretion in sentencing." *Id.* at 1439.

On the other hand, while "[c]ourts enjoy considerable discretion in their consideration of sentence bargains," their discretion "is more limited with respect to charge bargains." *Vanderwerff*, 788 F.3d at 1271. The "zone of judicial discretion is ordinarily quite limited" for charge bargains because "charge bargaining is a province primarily for the exercise of prosecutorial—not judicial—discretion." *Id.* at 1277. Although a prosecutor's decision to dismiss charges may prevent a district court from sentencing the defendant for such charges, the "court's sentencing discretion is implicated in this situation in precisely the same manner it is implicated by prosecutorial decisions to bring charges in the first place, where prosecutorial discretion is nearly absolute." *Robertson*, 45 F.3d at 1438. District courts are often ill-positioned to "know which charges are best initiated at which time, which allocation of prosecutorial resources is most efficient, or the relative strengths of various cases and charges." *Id.* (citations omitted) (quoting *United States v. Miller*, 722 F.2d 562, 565 (9th Cir. 1983)). Consequently, when evaluating a charge bargain, a district court must be wary of "second-guessing prosecutorial choices," because in so doing the court may abridge "the doctrine of separation of powers" by subordinating the executive branch's discretionary view of how to prosecute the case

17

to the court's own view of how the case should be resolved. *Id.* Thus, district courts must "accord proper deference to[] the government's exercise of prosecutorial discretion in fashioning a charge bargain." *Vanderwerff*, 788 F.3d at 1278.

Whenever a district court rejects any plea bargain—whether a charge bargain, sentence bargain, or hybrid bargain—it "must set forth, on the record, the prosecution's reasons for framing the bargain and the court's justification for rejecting it." *Robertson*, 45 F.3d at 1438. This requirement helps ensure that "district courts exercise sound judicial discretion and adequately respect the principle of prosecutorial independence." *Id.* In reviewing the rejection of a plea agreement, we remember that "[a] district court's discretion to reject plea agreements is not without limit and varies depending on the content of such a bargain." *Id.*

## IV.  DISCUSSION

Mr. Papke raises three arguments on appeal. First, he argues the district court abused its discretion by rejecting the First Plea—which he concedes was a hybrid bargain—because the district court did not adequately explain why it was rejecting the bargain and exhibited a negative attitude towards plea bargains generally. Second, he argues the district court erroneously characterized the Second Plea as a hybrid bargain rather than a charge bargain and that the court abused its discretion by rejecting the Second Plea without deferring to the Government's exercise of prosecutorial discretion. Third, Mr. Papke argues the case should be assigned to a different judge on remand. In his briefs before this court, Mr. Papke sought reassignment as to any remand, but at oral argument, Mr. Papke modified his request

to seek reassignment only if we reverse and remand for reconsideration of the First Plea.

The Government disagrees that the district court abused its discretion by rejecting the First Plea, pointing to the district court's explanations for rejecting that plea at the sentencing hearing and in its written order. But the Government concedes the district court abused its discretion by rejecting the Second Plea without affording any deference to the Government's prosecutorial discretion. Unlike Mr. Papke, however, the Government argues the case should not be reassigned on remand.[1]

---

[1] The Government does not argue that Mr. Papke's arguments are precluded by the Third Plea. Ordinarily, "a voluntary and unconditional guilty plea waives all non-jurisdictional defenses" that a defendant might raise on appeal. *United States v. Barnes*, 141 F.4th 1156, 1161 (10th Cir. 2025). Even so, the government may "waive or forfeit the effect of such a [guilty] plea." *United States v. De Vaughn*, 694 F.3d 1141, 1158 (10th Cir. 2012); *see also United States v. Rickett*, 535 F. App'x 668, 671 (10th Cir. 2013) (reviewing an argument otherwise barred by the defendant's unconditional guilty plea where the government "voluntarily and explicitly waived its right to enforce any preclusive effects of [that] guilty plea"). Here, Mr. Papke pleaded guilty under the terms of the Third Plea, which did not condition his guilty plea upon his ability to appeal the district court's denial of the first two plea agreements. *See Barnes*, 141 F.4th at 1162 (explaining that a defendant can preserve his or her appellate rights by entering a conditional guilty plea). Mr. Papke's arguments on appeal were thus arguably waived by this unconditional guilty plea, notwithstanding that the Third Plea did not contain an explicit waiver of his appellate rights. *See De Vaughn*, 694 F.3d at 1155 n.10 (noting that an unconditional guilty plea precludes non-jurisdictional arguments about a defendant's innocence even if the plea agreement does not contain an explicit appellate waiver). But the Government has not argued that Mr. Papke's unconditional guilty plea precludes him from appealing the district court's rejection of the first two plea agreements. It thus has waived "the effect of" that guilty plea, *id.* at 1158, and we may properly address whether the district court abused its discretion by rejecting the First and Second Pleas.

19

As we explain below, the district court did not abuse its discretion by rejecting the First Plea: the court adequately explained why it believed that plea insufficiently punished Mr. Papke for his conduct. But the district court mischaracterized the Second Plea as a hybrid bargain. It was a pure charge bargain premised solely on the dismissal of charges, with no attempt to curtail the district court's sentencing discretion for the counts to which Mr. Papke pleaded guilty. Accordingly, the district court abused its discretion by failing to afford due deference to the executive branch's decision to drop certain charges and enter into the Second Plea. Finally, although the record raises concerns about remanding to the same district judge, we ultimately agree with Mr. Papke's concession at oral argument that reassignment is necessary only if we reverse the rejection of the First Plea. Properly characterizing the Second Plea as a charge bargain should compel the district court to show appropriate deference to the Government's prosecutorial discretion. Because we remand solely with respect to the Second Plea, we do not reassign the case.

### A.     The First Plea Agreement[2]

Mr. Papke concedes the First Plea was a hybrid bargain because it "obligated the Government to dismiss Counts 1 and 2 (in the nature of a charge bargain), but it also contained an agreed sentencing range under Rule 11(c)(1)(C) (in the nature of a

---

[2] Although we below conclude that the district court abused its discretion by rejecting the Second Plea, we first consider whether the court properly rejected the First Plea because it was more advantageous to Mr. Papke than the Second Plea, and had it been accepted, no subsequent pleas would have been negotiated. *See* Fed. R. Crim. P. 11(h) (allowing appellate courts to reverse when a district court erroneously rejects a plea agreement if that rejection "affect[ed] substantial rights").

sentencing bargain)." Appellant's Br. at 46. Nonetheless, Mr. Papke argues the district court abused its substantial discretion to reject or accept that hybrid bargain by exhibiting "significant, and explicit, prejudice against any plea agreement that limits [its] sentencing discretion." *Id.* Mr. Papke also asserts that the district court did not "identify on the record any sufficient reason" for rejecting the First Plea where the Government had legitimate reasons to enter the First Plea and the fifteen-year sentence authorized by the plea was within the Guidelines range. *Id.* at 47–49. Last, Mr. Papke argues the court exhibited bias towards the First Plea by stating it could not "live with" that agreement—he urges that whether the court could "live with" a particular sentence is not a statutory sentencing factor the court should consider.[3] *Id.* at 47.

The Government disagrees. Although the district court "expressed frustration at continually having its sentencing discretion limited by what it saw as an overuse of [Rule] 11(c)(1)(C) agreements," the Government argues the court explained that this particular "stipulated sentence was insufficient considering the nature and duration of [Mr.] Papke's abuse of L.P." Appellee's Br. at 16–17. The Government argues it is immaterial whether the stipulated sentence under the First Plea fell within the

---

[3] The district court did not abuse its discretion by stating it would not impose a sentence it could not "live with." ROA Vol. I at 75, 87, 89. In fashioning a sentence, district courts are tasked with imposing "a sentence sufficient, but not greater than necessary, to comply with" the statutory goals of punishment. 18 U.S.C. § 3553(a). The district court's statement, while colloquial, comports with its statutory obligation to impose a sufficient sentence.

Guidelines range because the district court "reasonably concluded that the [G]uidelines range was insufficient." *Id.* at 18.

As discussed, district courts "enjoy considerable discretion in their consideration of sentence bargains" and hybrid bargains. *Vanderwerff*, 788 F.3d at 1271; *see also Robertson*, 45 F.3d at 1437–39. In fact, we have held that a district court retains discretion to reject a hybrid bargain merely "to preserve" its "discretion to sentence within the applicable range." *Robertson*, 45 F.3d at 1439. Sentence bargains "in which the government *guarantees* a particular sentence to a defendant," in particular, "directly and unequivocally infringe on the sentencing discretion of district courts." *Id.* We have therefore held "[t]here can be little doubt that rejecting a plea agreement due to the court's refusal to permit the parties to bind its sentencing discretion constitutes the exercise of sound judicial discretion." *Id.* All the same, a district court may abuse its discretion by rejecting a hybrid bargain based on a misapprehension of law or for reasons irrelevant to the terms of the plea agreement, such as "scheduling concerns." *Id.* at 1439; *see also id.* at 1435–46 (holding that the district court had wrongly rejected a plea agreement based on its misapplication of local procedural rules).

District courts may also properly reject sentence or hybrid bargains because they believe the stipulated sentence is insufficient. In *United States v. Hurst*, 94 F.4th 993 (10th Cir. 2024), the adult defendant pleaded guilty to sexual assault of a thirteen-year-old girl. *Id.* at 997–98. The parties entered into a Rule 11(c)(1)(C) plea agreement under which the government stipulated to a sentencing range of 63 to 78

22

months. *Id.* at 1002. The district court rejected the plea agreement because it believed the stipulated sentence was insufficient in light of "the nature and circumstances of this offense" and the defendant's lengthy criminal history. *Id.* at 1004–05. In affirming the district court's rejection of the plea, this court noted that the defendant had taken "advantage of the victim's youth and inexperience . . . to sexually exploit her." *Id.* at 1006. We held that such coercive conduct, when coupled with the defendant's criminal history, justified the district court's finding that the plea agreement did not adequately punish the defendant or protect the public. *Id.* at 1005–06.

Here, the district court stated in its written order that it rejected the First Plea because the stipulated sentence was "insufficient for the offense conduct, factoring in all relevant conduct and history." ROA Vol. I at 185. The court specified that it was concerned about the unobjected-to facts in the PSR showing that "Mr. Papke engaged in a pattern of activity involving prohibited sexual conduct by sexually abusing [L.P.] on numerous occasions over a six-year period starting when she was seven years old." *Id.* And when Mr. Papke's counsel argued the court's rejection of the First Plea was unreasonable, the court stated that the First Plea would not sufficiently deter Mr. Papke from committing further crimes, provide just punishment for the offense, or protect "the public from further crimes by [Mr. Papke] given the length of time in which he was comfortable abusing [L.P.]." *Id.* at 91. The district court's reasons for rejecting the First Plea were similar to those in *Hurst*—the court believed the stipulated sentence was insufficient given the seriousness of the offense and the years

23

of abuse Mr. Papke inflicted on the child victim. As in *Hurst,* we conclude the district court's reasons for rejecting the First Plea were sufficient.

Mr. Papke also asserts that the district court abused its discretion by displaying "a negative frame of mind toward the plea-bargaining process." Appellant's Br. at 41 (quoting *Vanderwerff*, 788 F.3d at 1276). Mr. Papke implies that, under *Vanderwerff*, a district court commits reversible error by showing disaffection for the plea-bargaining process. But Mr. Papke's reliance on *Vanderwerff* is inapt because there (1) the district court's "negative frame of mind toward" plea bargaining was but one of four factors indicating that the district court had abused its discretion, and (2) the plea agreement the court rejected was a charge bargain, which district courts have considerably less discretion to reject. *See Vanderwerff*, 788 F.3d at 1270–78.

To be sure, the district court here was resistant to accepting sentence bargains because they limit its sentencing discretion. *See* ROA Vol. I at 87 (criticizing the Government for not giving the court "some latitude" to fashion an appropriate sentence); *see also id.* (asserting that the U.S. Attorney's Office had wrongly "fallen in love with [Rule] 11(c)(1)(C)" agreements). But the record does not show that the district court rejected the First Plea *because* it generally disliked plea agreements. Rather, the record shows that the district court exercised its "considerable discretion" to reject the First Plea because it believed the agreement insufficiently punished Mr. Papke for his longstanding abuse of L.P. *Vanderwerff*, 788 F.3d at 1271. Accordingly, the district court did not abuse its discretion by rejecting the First Plea.

### B.    The Second Plea Agreement

With respect to the Second Plea, however, we agree with the parties that the district court abused its discretion. First, the district court erroneously characterized the Second Plea as a hybrid bargain when it was, in fact, a charge bargain. Second, the district court failed to give due deference to the Government's exercise of its prosecutorial discretion.

Both Mr. Papke and the Government agree that the district court mischaracterized the Second Plea as a hybrid bargain, rather than as a charge bargain. And because of that mischaracterization, the parties argue the district court did not show deference to the exercise of prosecutorial discretion implicit in a charge bargain. Mr. Papke, in particular, points out that the Government "set forth valid reasons" for entering the Second Plea, yet the district court "brushed these concerns aside." Appellant's Br. at 36–37. He urges that the stipulated sentence of seventeen years was "a substantial punishment" falling within the Guidelines range, *id.* at 37, and "would have been reasonable" under the § 3553(a) factors, *id.* at 38. And he asserts that the court's rejection of the Second Plea stemmed from a "general hostility to plea bargaining." *Id.* at 41. Similarly, the Government argues that rather than giving "adequate deference to prosecutorial discretion[] when it rejected the" Second Plea, the court "gave none at all." Appellee's Br. at 25.

During the sentencing hearing, the parties both characterized the Second Plea as a charge bargain—an agreement by the Government to dismiss one charge in exchange for Mr. Papke's guilty plea to others, with no agreement as to the sentence.

25

Although the district court did not challenge that characterization at the hearing, it ruled in its subsequent order that the Second Plea was a hybrid bargain. The district court reasoned that the Second Plea "limit[ed] the Court's sentencing power by dismissing the count with the greatest exposure and" leaving "two counts that, if run consecutively at their statutory maximums, would total 204 months." ROA Vol. I at 184. According to the district court, this assessment was consistent with *United States v. Carrigan*, 778 F.2d 1454 (10th Cir. 1985), which the court construed as holding that any plea "'cast in the form of a dismissal of a count' [that] has the effect of limiting the sentence available" is a hybrid bargain. *Id.* at 182 (quoting *Carrigan*, 778 F.2d at 1463). The court further held that, under *Robertson*, its "refusal to permit the parties to bind its sentencing discretion constitute[d] the exercise of sound judicial discretion." *Id.* at 186 (quoting *Robertson*, 45 F.3d at 1439). In short, the district court held the Second Plea was a hybrid bargain under *Carrigan* and then exercised its ample discretion to reject such pleas under *Robertson*.

The district court erred in so doing. Below, we first examine our precedent and explain why the Second Plea is not a hybrid bargain. After properly categorizing the Second Plea as a charge bargain, we next address whether the district court abused its limited discretion by rejecting it.

1.    **The Second Plea was a pure charge bargain.**

The district court erroneously relied on *Carrigan* to characterize the Second Plea as a hybrid bargain. In that case, a corporate defendant and one of the corporation's employees were indicted for submitting fraudulent claims to the United

26

States in the amount of $629,000. *Carrigan*, 778 F.2d at 1456–58. The parties entered into a plea agreement under which the corporate defendant agreed to (1) settle a related civil action brought by the United States for $900,000; (2) never hire the employee defendant again; (3) provide its employees with training to ensure similar fraud never occurred; and (4) plead guilty to the three charges against it, for which the maximum sentence was a fine of $30,000. *Id.* at 1456–57 & n.3. In exchange, the government agreed to move to dismiss all criminal charges against the employee defendant. *Id.* at 1457. After considering the plea agreement and the government's separately filed motion to dismiss, the district court rejected both because it found the plea agreement insufficiently punished the employee defendant by allowing him to avoid any punishment for defrauding the United States. *Id.* at 1458.

On appeal, the government argued that "the district court in effect issued two orders, one rejecting the proposed plea agreement under Rule 11(e)[4] and one denying the Rule 48(a) motion to dismiss an indictment" against the employee. *Id.* at 1460. The government thus argued that even though it filed the motion to dismiss pursuant to the plea agreement, the district court should have analyzed the motion to dismiss under the standard in Federal Rule of Criminal Procedure 48(a), which allows courts only limited discretion to deny a government motion to dismiss criminal charges. *Id.* at 1462–63. We rejected this argument because "[t]he record clearly indicate[d] that

---

[4] Although *Carrigan* references Federal Rule of Criminal Procedure 11(e) when discussing various types of plea bargains, the rule has since been reorganized and the different categories of plea bargains are now outlined in Rule 11(c). *See* Fed. R. Crim. P. Rule 11 advisory committee's note to 2002 amendment.

[the corporate defendant's] plea of guilty was contingent upon a number of factors, one of which was the dismissal of charges against [the employee]." *Id.* at 1460–61. The plea agreement thus was "part charge bargain and part sentence bargain"—that is, it was a hybrid bargain—and the district court possessed "discretionary power to reject [such] plea bargains." *Id.* at 1462. We then held that the district court did not abuse its discretion by rejecting the novel hybrid plea agreement that allowed the employee defendant to escape all punishment after defrauding the United States of more than $600,000. *See id.* at 1460–64.

As the district court here noted, in *Carrigan* we relied on an out-of-circuit case, *United States v. Bean*, 564 F.2d 700 (5th Cir. 1977). In relevant part, we noted *Bean*'s holding that because plea bargains premised on the dismissal of charges impair a district court's overall sentencing discretion, "the standard for review of refusal of plea bargains should be closer to the standards for review of sentencing than for review of a dismissal which does not involve a plea bargain under Rule 48(a)." *Carrigan*, 778 F.2d at 1463 (quoting *Bean*, 564 F.2d at 704). In *Carrigan*, we followed *Bean*'s analysis and rejected the government's argument that a motion to dismiss filed under a hybrid bargain should be reviewed under the strictures of Rule 48(a) rather than for abuse of discretion under Rule 11. *Id.* at 1464. Specifically, we held that "the district court's discretion [to reject a plea bargain] and our standard of review are governed by Rule 11(e) and not by Rule 48(a)." *Id.* Importantly, however, we did not hold in *Carrigan* that *any* plea bargain limiting a district court's sentencing discretion is a hybrid bargain; we merely decided that we review the

28

rejection of a plea agreement for abuse of discretion under Rule 11, not under Rule 48(a).

Furthermore, *Carrigan* was not our last word on this matter. In *Robertson*, we closely explored the differences between plea bargains and sentence bargains, concluding that the bargain at issue there was a hybrid of the two. *Robertson*, 45 F.3d at 1437–38. We explained that "charge bargains implicate executive discretion with respect to charging decisions," and that the doctrine of "separation of powers mandates the judiciary remain independent of executive affairs and vice versa." *Id.* at 1437. Although we recognized that a charge bargain may limit a court's sentencing discretion by preventing it from sentencing based on the dismissed charges, we held that the "court's sentencing discretion is implicated only as an incidental consequence of the prosecution's exercise of executive discretion." *Id.* at 1438. "In fact, a court's sentencing discretion is implicated in this situation in precisely the same manner it is implicated by prosecutorial decisions to bring charges in the first place, where prosecutorial discretion is nearly absolute." *Id.* We noted that district courts may "reject charge bargains in the sound exercise of judicial discretion"—but in exercising this discretion, district courts should hesitate to "second-guess[] prosecutorial choices" because in so doing they may easily abridge "the doctrine of separation of powers." *Id.*

In *Vanderwerff*, we reversed a district court's rejection of a charge bargain, like the Second Plea here. *Vanderwerff*, 788 F.3d at 1279. It was undisputed that the plea agreement in *Vanderwerff* was a charge bargain, because it contained no

29

stipulations about the defendant's sentence but instead "was predicated on the dismissal of [two] charges . . . in exchange for a guilty plea to another charge." *Id.* at 1272. We held that the district court had committed a series of errors when rejecting the charge bargain, including that it displayed a "negative frame of mind toward the plea-bargaining process," which informed "its decision to reject the agreement at issue." *Id.* at 1276. We noted that the district court's animosity towards plea agreements was "particularly troubling because [the] plea agreement involved a charge bargain, where the zone of judicial discretion is ordinarily quite limited." *Id.* at 1277. We clarified that "charge bargaining is a province primarily for the exercise of prosecutorial—not judicial—discretion" and held that the district court's animosity to plea bargaining "effectively crippled, and failed to accord proper deference to, the government's exercise of prosecutorial discretion in fashioning a charge bargain." *Id.* at 1277–78.

As illustrated by this precedential backdrop, the district court wrongly relied on *Carrigan* to characterize the Second Plea as a hybrid bargain. *Carrigan* did not hold that any plea agreement limiting the maximum sentence a district court can impose should be characterized as a hybrid bargain. In fact, *Carrigan* did not analyze charge bargains at all—it dealt with a novel hybrid bargain that was "part charge bargain and part sentence bargain." 778 F.2d at 1462. And after we concluded that the plea agreement in *Carrigan* was a hybrid bargain, we focused entirely on the government's argument that the dismissal of charges under a hybrid bargain should be reviewed piecemeal under Rule 48(a)'s deferential standard. *Id.* at 1464. Nowhere

30

in that decision did we purport to define the extent of a district court's discretion to reject a charge bargain. Subsequently, in *Robertson*—another hybrid bargain case—we *did* consider how "[t]he different types of plea bargains implicate different types of discretion and power." *Robertson*, 45 F.3d at 1437. And we described as "dicta" *Carrigan*'s discussion about how "charging decisions 'restrict the district court's ability to impose what it considered an appropriate sentence.'" *Id.* at 1438 (quoting *Carrigan*, 778 F.2d at 1464). Put simply, *Carrigan* did not announce a broad principle that *any* plea bargain restricting a district court's sentencing discretion should be characterized as a hybrid bargain. Rather, *Carrigan* rejected a discrete argument—that the dismissal of charges under a hybrid agreement is governed by Rule 11, not Rule 48(a)—and its analysis cannot be divorced from that context.

Here, the district court misconstrued *Carrigan* by ruling that the Second Plea was a hybrid bargain because it limited its sentencing discretion by dismissing "the count with the greatest exposure." ROA Vol. I at 184. The ruling ignores our only precedent analyzing a charge bargain, *Vanderwerff*, in which we held that a plea agreement "predicated on the dismissal of [two] charges . . . in exchange for a guilty plea to another charge" was "properly characterized as a charge bargain." *Vanderwerff*, 788 F.3d at 1272. The Second Plea was predicated on the dismissal of Count Three in exchange for Mr. Papke's guilty plea to Counts One and Two and it contained no agreement with respect to the sentence to be imposed. As we stated in *Vanderwerff*, *Robertson*, and *Carrigan*, a plea agreement that is "predicated on the dismissal of other charges" in exchange for a guilty plea to a remaining charge or

31

charges is a charge bargain. *Id.*; *Carrigan*, 778 F.2d at 1462; *Robertson*, 45 F.3d at 1437 (stating a charge bargain is "predicated on the dismissal of some counts" in exchange for a guilty plea to other counts).

Accordingly, the district court erred by characterizing the Second Plea as a hybrid bargain rather than a charge bargain.

**2.    The district court abused its discretion by rejecting the Second Plea without affording due deference to the Government's exercise of prosecutorial discretion.**

Although the Second Plea is a charge bargain, the district court could have rejected the agreement "in the sound exercise of judicial discretion." *Robertson*, 45 F.3d at 1438. But as discussed, the "zone of judicial discretion" to reject a charge bargain is "quite limited." *Vanderwerff*, 788 F.3d at 1277. District courts must display deference when analyzing a charge bargain, because charge bargains represent an exercise of prosecutorial discretion and "separation of powers mandates the judiciary remain independent of executive affairs." *Robertson*, 45 F.3d at 1437. Indeed, "charge bargains raise the possibility of improper judicial influence over charging." *Miller*, 722 F.2d at 564. Thus, although Rule 11 authorizes district courts to "reject charge bargains in the sound exercise of judicial discretion," a district court should display "hesitancy before second-guessing prosecutorial choices."[5] *Robertson*, 45 F.3d at 1438.

---

[5] The deference to prosecutorial discretion required under *Robertson* and *Vanderwerff* tracks with that afforded in other circuits. *See, e.g.*, *In re United States*, 32 F.4th 584, 594 (6th Cir. 2022) ("A court considering a charge bargain must,

Here, the district court showed little "hesitancy before second-guessing prosecutorial choices" made by the Government. *Id.* In its written order, the district court acknowledged that the Government entered the Second Plea because (1) the Government wanted a quick disposition of the case for L.P.'s sake; (2) the Government did not want to retraumatize L.P. by subjecting her to cross-examination; and (3) "the Government had concerns about proving Count Three under a recent Tenth Circuit opinion." ROA Vol. I at 183. But the district court dismissed these concerns with little analysis. The court repeated that it believed L.P. was "very capable of testifying at trial," and it reiterated that it was "not concerned at all" about whether the Government could prove Count Three beyond a reasonable doubt. *See id.* at 182–83 & n.4. At the hearing for the Second Plea, the district court told the parties it was "questioning what's going on here, to say the least." *Id.* at 138. And in rejecting the Second Plea, the court indicated it was "disappoint[ed]" that the parties had entered another plea agreement after the court rejected the First Plea

therefore, exercise its discretion with due regard to prosecutorial prerogatives."); *United States v. Walker*, 922 F.3d 239, 250 (4th Cir. 2019) (requiring that district courts evaluating plea bargains "must accord due respect to the prosecutorial prerogatives involved in charging decisions, thus ensuring that the separation of executive and judicial powers is not infringed"), *rev'd on other grounds*, 140 S. Ct. 474 (2019); *United States v. Fokker Servs. B.V.*, 818 F.3d 733, 745 (D.C. Cir. 2016) ("[A] district court lacks authority to reject a proposed agreement based on mere disagreement with a prosecutor's underlying charging decisions."); *In re Vasquez-Garcia*, 443 F.3d 692, 698 (9th Cir. 2006) (holding that a district court's discretion over sentencing is "cabined [] by the prosecutor's decision regarding which charges to pursue"); *United States v. Miller*, 722 F.2d 562, 565 (9th Cir. 1983) (holding that "[a]lthough courts are free to accept or reject individual charge bargains," they also "should be wary of second-guessing prosecutorial choices").

because the court "could [not] have been anymore clear about where we were headed in this case." *Id.* at 147. The district court never responded to the Government's specific concern—which the GAL also expressed—that L.P. would struggle to endure the rigors of cross-examination because of her ongoing mental health struggles.

In sum, because the district court misidentified the Second Plea as a hybrid bargain, it did not display the appropriate hesitancy before second-guessing the Government's decision to agree to it. Instead, the district court rejected the Government's exercise of prosecutorial discretion with scant analysis while criticizing the Government for not giving the court "some latitude" in sentencing. *Id.* at 183. As we explained in *Vanderwerff*, "charge bargaining is a province primarily for the exercise of prosecutorial—not judicial—discretion," and here the district court's failure to give any deference to the Government's reasons for entering the Second Plea is incompatible with our constitutional system of separation of powers. 788 F.3d at 1277. The district court abused its discretion by failing to "accord proper deference to[] the government's exercise of prosecutorial discretion in fashioning a charge bargain." *Id.* at 1278. We therefore reverse the rejection of the Second Plea.

## C.     *Reassignment on Remand*

Because we hold that the district court abused its discretion by rejecting the Second Plea, we must decide whether to assign the case to a different judge on remand. In his briefs on appeal, Mr. Papke asserts that the district court displayed substantial bias "against [any] plea agreements that limit the court's sentencing discretion." Reply Br. at 15. As evidence of the district court's disapproval of plea

34

bargaining, Mr. Papke points to the Chambers Rule the district court adopted immediately after it accepted the Third Plea, which stated that the court would no longer consider any future sentence bargains made under Rule 11(c)(1)(C). *See* Appellant's Br. at 49–50; *see also* Appellant's Br. Attach. 2 at 5 (Chambers Rule). Mr. Papke also argues that, in light of the court's ardent opposition to the First and Second Pleas, it is likely the court would "have substantial difficulty putting [its] prior statements out of [] mind." Appellant's Br. at 50. And Mr. Papke notes that, if the court were to reject the Second Plea again, it would sow doubt as to "whether the court had given the issues a thorough, new review." Reply Br. at 16. At the same time, Mr. Papke admits the court "showed [no] personal bias against" him or his counsel. Reply Br. at 14.

The Government argues the case should not be reassigned. It asserts the record does not show that the court harbors any bias against Mr. Papke; rather, the court legally erred by characterizing the Second Plea "as a hybrid bargain and factually erred by failing to afford proper deference to prosecutorial discretion." Appellee's Br. at 29. The Government further contends that Mr. Papke's reliance on the district court's rule categorically rejecting all Rule 11(c)(1)(C) agreements is "outside both the district court and the appellate record." *Id.* at 30. And even if this court considers the Chambers Rule, the Government urges that *Robertson* held that "it is not an abuse of discretion for a district court to categorically refuse to accept Rule 11(c)(1)(C) plea agreements simply because it does not want to have its discretion limited." *Id.* at 31 (citing *Robertson*, 45 F.3d at 1439). Last, the Government argues that

35

"reassignment would entail waste and duplication in this fact-intensive, drawn-out case" by "requir[ing] a new district judge to become familiar with the entirety of the case history before it could properly evaluate the" Second Plea. *Id.* at 30.

Because reassignment to a different judge is an extraordinary request, we typically "will remand with instructions for assignment of a different judge only when there is proof of personal bias or under extreme circumstances." *Mitchell v. Maynard*, 80 F.3d 1433, 1448 (10th Cir. 1996). Even so, reassignment may be warranted with no "actual bias or prejudice" if reassignment would ameliorate the "appearance of impropriety." *United States v. Slinkard*, 61 F.4th 1290, 1296 (10th Cir. 2023) (quotation marks omitted). We consider three factors when assessing a request for reassignment:

> (1) whether the original judge would reasonably be expected upon remand to have substantial difficulty in putting out of his or her mind previously-expressed views or findings determined to be erroneous or based on evidence that must be rejected, (2) whether reassignment is advisable to preserve the appearance of justice, and (3) whether reassignment would entail waste and duplication out of proportion to any gain in preserving the appearance of fairness.

*Id.* at 1296–97 (quoting *Mitchell*, 80 F.3d at 1450). We now address each of these factors in turn.

First, both parties agree that the district court did not display bias or prejudice towards Mr. Papke and his counsel. But the record does indicate the court was disinclined to accept any plea bargain that limited its sentencing discretion—in particular, the court criticized the Government for failing to give it "some latitude" in

sentencing Mr. Papke and more broadly criticized the U.S. Attorney's Office for "fall[ing] in love with [Rule] 11(c)(1)(C)" plea agreements. ROA Vol. I at 87.

The district court's predisposition to reject any plea agreement limiting its sentencing discretion is particularly evident in the Chambers Rule the court created after it adopted the Third Plea.[6] The rule categorically stated that the district court would "no longer accept plea agreements made" under Rule 11(c)(1)(C). Appellant's Br. Attach. 2 at 5. This categorical proscription of binding sentence bargains directly contradicts Rule 11, which expressly authorizes such plea agreements. The district court has no more authority to override the Federal Rules of Criminal Procedure than to reject any other any source of law. *See Robertson*, 45 F.3d at 1436 (holding that the "adoption of [a] district court's internal rule [was] proscribed by" Federal Rule of Criminal Procedure 57); *see also* 28 U.S.C. § 2071(a) (forbidding district courts from creating rules that are inconsistent with the federal "rules of practice and procedure"). Moreover, the very "existence of discretion requires its exercise." *Miller*, 722 F.2d at 565. A categorical refusal to consider *any* Rule 11(c)(1)(C) plea bargain without regard for the circumstances in a particular case constitutes an

---

[6] To the extent the Government contends we cannot consider the propriety of this Chambers Rule because it is outside the record, we take judicial notice of the publicly available judicial document attached to Mr. Papke's brief, since nothing indicates it is inaccurate or unreliable. *See* Fed. R. Evid. 201(b) (authorizing courts to take judicial notice of "a fact that is not subject to reasonable dispute"). That said, at oral argument Mr. Papke's counsel notified us that the district court has since amended its Chambers Rules to remove this categorical rejection of Rule 11(c)(1)(C) agreements. Oral Argument at 31:15.

arbitrary and unreasonable exercise of discretion, as other circuits have recognized.[7]

*See, e.g.*, *In re United States*, 32 F.4th 584, 594 (6th Cir. 2022) (stating that district

courts may not reject plea agreements "pursuant to a categorical policy"); *United*

*States v. Walker*, 922 F.3d 239, 249 (4th Cir. 2019) (noting that a district court's

"failure to consider [a] specific agreement would constitute an abdication—and hence

an abuse—of discretion"), *rev'd on other grounds*, 140 S. Ct. 474 (2019); *In re*

*Morgan*, 506 F.3d 705, 712 (9th Cir. 2007) (holding "that district courts must

consider individually every sentence bargain presented to them"). Similarly, this

circuit has long recognized that a district court abuses its discretion by refusing to

consider "the facts upon which the exercise of [the court's] discretionary judgment is

based." *Clyma v. Sunoco, Inc.*, 594 F.3d 777, 783 (10th Cir. 2010) (quotation marks

omitted).

Mr. Papke is correct that the district court expressed considerable reluctance to

approve any plea agreement that limited its discretion to sentence him for the charges

named in the initial indictment. The court also showed "a strong personal belief

regarding what punishment is appropriate," *Slinkard*, 61 F.4th at 1297, because it

---

[7] *United States v. Robertson*, 45 F.3d 1423 (10th Cir. 1995), does not hold
otherwise. There, we affirmed a district court's decision not to accept any
Rule 11(c)(1)(C) plea agreements *in the case before it*, in light of the court's "long
involvement in the case." *Id.* at 1436–37, 1439. We explained that "[t][here can be
little doubt that rejecting *a* plea agreement due to the court's refusal to permit the
parties to bind its sentencing discretion constitutes the exercise of sound judicial
discretion." *Id.* at 1439 (emphasis added). *Robertson* thus did not hold that district
courts can adopt a categorical rule refusing to consider any Rule 11(c)(1)(C)
agreement in any case—it merely held that a district court has broad discretion to
reject a sentence plea in a particular case.

stated multiple times that it could not "live with" the sentences stipulated in the First and Second Pleas. Bearing all this in mind, it is possible that the district court may have "substantial difficulty" relinquishing its previous views and giving the Second Plea a fresh look on remand. *Id.* at 1296 (quotation marks omitted).

Turning to the second factor, we consider whether reassignment is necessary to promote the appearance of justice. *See id.* at 1297. Although the district court rejected both the First and the Second Pleas, it did eventually accept the Third Plea rather than forcing the parties to trial. It is also true that the district court's rejection of the Second Plea stemmed from an error of law, in that it mischaracterized the Second Plea as a hybrid bargain rather than a charge bargain. Nothing in the record reveals that the district court would be unwilling to analyze the Second Plea as a charge bargain on remand. On the other hand, the district court's unwillingness to defer to the Government's discretionary decision to enter the Second Plea was consistent with its hostility toward the Government's use of sentence agreements generally. *See, e.g.*, ROA Vol. I at 87 (scolding the Government for "fall[ing] in love with the 11(c)(1)(C)"). That frustration and hostility is also reflected in the tone of the district court's written order rejecting the First and Second Pleas. *See id.* at 182 (stating "it seems the parties weren't listening" to the court's explanations for rejecting the First and Second Pleas); *id.* at 184 (dismissing the parties' arguments that the Second Plea was a charge bargain as "oversimpli[stic]"); *id.* at 186 n.6 (accusing the parties of mischaracterizing *Robertson*). Even so, we cannot say the district court would be "unwilling to consider [our instructions] on remand."

39

*Slinkard*, 61 F.4th at 1297. This is particularly true where our instructions on remand dictate that the Second Plea is a charge bargain and the district court's discretion to reject it is significantly curtailed.

With respect to the third factor, the Government overstates the "waste and duplication" that would ensue if the case were reassigned. *See* Appellee's Br. at 30 (arguing reassignment would "significantly extend[] the already protracted" case by requiring "a new district judge to become familiar with the entirety of the case history"). This is a discrete sentencing issue. If the case were reassigned, the new judge would primarily need to review the terms of the Second Plea and the PSR and decide whether to accept the plea agreement. This should not significantly extend the life of this case or "impose a substantial additional burden on the judiciary." *See Slinkard*, 61 F.4th at 1297 (holding that remanding to another judge for resentencing "will not impose a substantial additional burden on the judiciary").

In sum, the record reflects that the district court may struggle to keep an open mind on remand, and we do not believe that reassignment would cause undue "waste and duplication" of effort. *Slinkard*, 61 F.4th at 1297 (quotation marks omitted). At the same time, we are not convinced that reassignment is necessary to avoid the appearance of impropriety, and we are confident the proper characterization of the Second Plea as a charge bargain will guide the district court's analysis.

Ultimately, we resolve this issue against reassignment, consistent with Mr. Papke's post-briefing concession.[8] During oral argument, Mr. Papke's counsel retreated from his arguments in briefing by conceding that if we remand only on the Second Plea, reassignment is unnecessary. Oral Argument at 15:15–15:59. Counsel reasoned that the proper characterization of the Second Plea as a charge plea would cabin the district court's discretion such that reassignment would be unnecessary. We agree that correction of the legal error with respect to the nature of the Second Plea and the scope of discretion alleviates our concerns about the district court's ability to view the Second Plea with an open mind on remand. Accordingly, we do not assign the case to a different judge on remand.

## V.    CONCLUSION

For the reasons above, we REMAND the case to the district court with instructions to VACATE Mr. Papke's convictions and sentence and for the district court to reconsider the Second Plea in accordance with this opinion.

---

[8] Although Mr. Papke concedes reassignment is not required if we remand only with respect to the Second Plea, we analyze the *Mitchell* factors to perform our independent duty to assure fairness and the appearance of justice. *Mitchell v. Maynard*, 80 F.3d 1433, 1450 (10th Cir. 1996).